PROBUILD EAST, LLC *v.* ADRIAN C. POFFENBERGER
(AC 32996)

Gruendel, Espinosa and Borden, Js.

Argued February 2—officially released June 12, 2012

*Genevieve P. Salvatore,* for the appellant (defendant).

*Taryn D. Martin,* with whom, on the brief, was *Robert A. Ziegler,* for the appellee (plaintiff).

GRUENDEL, J. The defendant, Adrian C. Poffenberger, appeals from the judgment of the trial court in favor of the plaintiff, ProBuild East, LLC. The defendant claims that the court improperly determined that (1) the plaintiff's mechanic's lien was valid in accordance with General Statutes § 49-34, (2) a lienable fund existed where the general contractor was paid the contract price in full and (3) a lienable fund existed where the contract between the defendant and the general contractor did not comply with the Home Improvement Act (act), General Statutes § 20-418 et seq. We affirm the judgment of the trial court.

The relevant facts, as found by the court, are as follows. In 2008, the defendant entered into a contract with DJ Flanagan Builders, LLC (Flanagan Builders), to renovate his property in Milford. The initial price was $94,000, but as the work progressed there were various modifications that resulted in increases to the price. On September 23, 2009, Flanagan Builders entered into a contract with the plaintiff, formerly known as Strober Building Supply, LLC,[1] to provide supplies and materials for the project. The plaintiff delivered various materials to Flanagan Builders in January and February, 2009. On May 4, 2009, the plaintiff filed a certificate of mechanic's lien dated April 28, 2009. The certificate was sworn and subscribed to by Alexander Pilagin, the credit manager for the plaintiff. The lien claimed that the plaintiff furnished materials and rendered services in the construction of a building on property owned by the defendant in Milford. The lien claimed that materials and services were furnished from January 8 to February 24, 2009, and the value of the materials and services totaled $15,275.47. A notice

---

[1] On March 28, 2011, the plaintiff moved to substitute ProBuild East, LLC, as plaintiff, which this court granted.

of lis pendens thereafter was recorded on the Milford land records.

Thereafter, the plaintiff filed its complaint seeking foreclosure of the lien. The defendant filed an answer, asserting two special defenses. The defendant claimed that the plaintiff's lien was invalid, first, because the defendant paid Flanagan Builders the full amount of the original contract price and, second, because Pilagin had no personal knowledge of the materials purportedly provided by the plaintiff.

The matter was tried to the court. In its memorandum of decision, the court first determined that the lien was not invalidated by an incorrect commencement date on the certificate because the error was not made in bad faith and did not harm the defendant. Turning to the defendant's arguments about the lack of a lienable fund, the court concluded that a lienable fund did exist because the defendant still owed Flanagan Builders $10,800. The court then determined that the fact that the underlying contract between the defendant and Flanagan Builders did not comply with the act did not invalidate the lien. It further concluded that the lien should be enforced in the reduced amount of $10,800. Thereafter, the plaintiff filed a motion for a judgment of strict foreclosure. The court rendered a judgment of foreclosure by sale, setting a sale date of January 29, 2011. This appeal followed.

Before turning to the defendant's claims, we note the applicable standard of review. "On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of

the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. That is the standard and scope of this court's judicial review of decisions of the trial court. Beyond that, we will not go. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *Rollar Construction & Demolition, Inc.* v. *Granite Rock Associates, LLC*, 94 Conn. App. 125, 130, 891 A.2d 133 (2006).

I

The defendant argues that the court erred in finding that the plaintiff's mechanic's lien is valid under § 49-34[2] despite the incorrect commencement date listed on the certificate.[3] Specifically, the defendant challenges

[2] General Statutes § 49-34 provides: "A mechanic's lien is not valid unless the person performing the services or furnishing the materials (1) within ninety days after he has ceased to do so, lodges with the town clerk of the town in which the building, lot or plot of land is situated a certificate in writing, which shall be recorded by the town clerk with deeds of land, (A) describing the premises, the amount claimed as a lien thereon, the name or names of the person against whom the lien is being filed and the date of the commencement of the performance of services or furnishing of materials, (B) stating that the amount claimed is justly due, as nearly as the same can be ascertained, and (C) subscribed and sworn to by the claimant, and (2) not later than thirty days after lodging the certificate, serves a true and attested copy of the certificate upon the owner of the building, lot or plot of land in the same manner as is provided for the service of the notice in section 49-35."

[3] The defendant also argues that the lien is invalid under § 49-34 because Pilagin could not properly swear to the accuracy of the information contained in the lien because he did not have personal knowledge of the truth of the information he swore to. The defendant asserted this as a special defense, but the court's memorandum of decision does not address it. The court addressed the evidentiary issue of the admission of twenty-four

the court's factual finding that the defendant was not harmed by the inclusion of an incorrect commencement date, and the lien was therefore not invalid for failing to comply with § 49-34. We disagree.

Section 49-34 sets forth the required contents of a certificate of mechanic's lien. Among the requisites is that the certificate state "the date of the commencement of the performance of services or furnishing of materials . . . ." The commencement date, and not the filing date, establishes the lienor's priority as against other claimants. General Statutes § 49-33 (b); see also *New England Savings Bank* v. *Meadow Lakes Realty Co.*, 243 Conn. 601, 616, 706 A.2d 465 (1998).

"We have long endorsed a policy favoring liberal construction of claimed inadequacies in certificates of mechanics' liens in order to achieve the remedial purposes of the mechanics' lien statutes. . . . In accordance with this policy, our courts have been liberal in validating liens despite claimed errors on the face of the lien certificate where the mistake was made in good faith and no resulting prejudice was claimed." *J. C. Penney Properties, Inc.* v. *Peter M. Santella Co.*, 210 Conn. 511, 514–15, 555 A.2d 990 (1989). "As we have reasoned many times, we do not think a court of equity can be called upon to declare [a] lien utterly void upon the motion of persons who have lost nothing by [the] mistake. . . . Therefore, [w]here the misstatement of

invoices that listed materials sold to Flanagan Builders and found that they were properly admitted as business records through Pilagin's testimony despite the fact that he did not have personal knowledge of whether the materials listed on the invoices were used in the project. The court's memorandum of decision does not address the issue of Pilagin's lack of personal knowledge as it related to the defendant's claim that the lien was invalid because the lien certificate was not properly sworn and subscribed to by Pilagin. Although we can imply from the court's ruling in favor of the plaintiff that the defendant did not carry his burden of proof as to the special defense, it is well settled that "[t]his court is unable to review claims that were not expressly addressed by the trial court." *Miller* v. *Miller*, 124 Conn. App. 36, 40, 3 A.3d 1018 (2010). Accordingly, we decline to review this claim.

the claim is intentional, that is, where the statement of the claim is intentionally false, or where it is fraudulent, the lien will be void; but where it is the result of a mistake, the misstatement of the claim will not invalidate the lien." (Citation omitted; internal quotation marks omitted.) *First Constitution Bank* v. *Harbor Village Ltd. Partnership*, 230 Conn. 807, 816, 646 A.2d 812 (1994).

The court noted that Dennis J. Flanagan, the operator of Flanagan Builders, testified that he began to use materials provided by the plaintiff in October, 2008. The lien certificate stated a commencement date of January 8, 2009. The court found that there was no evidence indicating how the defendant was prejudiced by this error, nor was there evidence demonstrating a fraudulent intent. The record supports the court's conclusion. Flanagan testified at trial that he began work at the defendant's property in late September or early October, 2008, and that he began using materials from the plaintiff in the end of September or October, 2008. The invoices for these materials are dated from January 8 to February 24, 2009. The fact that the dates on the certificate correspond to the dates on the invoices support the court's finding that the commencement date was not intentionally false or fraudulent. Upon our review of the record, there is no evidence to demonstrate a fraudulent intent in stating the commencement date as January 8, 2009. The court also found that the defendant failed to introduce any evidence or present any argument regarding how he was injured or prejudiced by the incorrect commencement date. "If neither deficiency exists, we express satisfaction that the statute has been substantially complied with and reject the argument that the lien should be invalidated." *First Constitution Bank* v. *Harbor Village Ltd. Partnership*, supra, 230 Conn. 818. The court thus properly found that the lien was valid.

## II

The defendant claims that the court's factual finding that there was unpaid contract debt owed to Flanagan Builders by the defendant was improper given that the defendant paid Flanagan Builders the original contract price of $94,000. We disagree.

The statutory limitations on lienable funds as applicable to subcontractors are set forth in General Statutes §§ 49-33[4] and 49-36.[5] A subcontractor is subrogated to

[4] General Statutes § 49-33 provides in relevant part: "(a) If any person has a claim for more than ten dollars for materials furnished or services rendered in the construction, raising, removal or repairs of any building or any of its appurtenances or in the improvement of any lot or in the site development or subdivision of any plot of land, and the claim is by virtue of an agreement with or by consent of the owner of the land upon which the building is being erected or has been erected or has been moved, or by consent of the owner of the lot being improved or by consent of the owner of the plot of land being improved or subdivided, or of some person having authority from or rightfully acting for the owner in procuring the labor or materials, the building, with the land on which it stands or the lot or in the event that the materials were furnished or services were rendered in the site development or subdivision of any plot of land, then the plot of land, is subject to the payment of the claim. . . .

"(e) A mechanic's lien shall not attach to any such building or its appurtenances or to the land on which the same stands or to any lot or to any plot of land, in favor of any subcontractor to a greater extent in the whole than the amount which the owner has agreed to pay to any person through whom the subcontractor claims subject to the provisions of section 49-36.

"(f) Any such subcontractor shall be subrogated to the rights of the person through whom the subcontractor claims, except that the subcontractor shall have a mechanic's lien or right to claim a mechanic's lien in the event of any default by that person subject to the provisions of sections 49-34, 49-35 and 49-36, provided the total of such lien or liens shall not attach to any building or its appurtenances, or to the land on which the same stands or to any lot or to any plot of land, to a greater amount in the whole than the amount by which the contract price between the owner and the person through whom the subcontractor claims exceeds the reasonable cost, either estimated or actual, as the case may be, of satisfactory completion of the contract plus any damages resulting from such default for which that person might be held liable to the owner and all bona fide payments, as defined in section 49-36, made by the owner before receiving notice of such lien or liens . . . ."

[5] General Statutes § 49-36 provides in relevant part: "(a) No mechanic's lien may attach to any building or its appurtenances, or to the land on which the same stands, or any lot, or any plot of land, in favor of any person, to

the rights of the general contractor through whom he claims, such that a subcontractor only can enforce a mechanic's lien to the extent that there is unpaid contract debt owed to the general contractor by the owner. See General Statutes § 49-33 (f); see also *Seaman* v. *Climate Control Corp.*, 181 Conn. 592, 601–602, 436 A.2d 271 (1980). Sections 49-33 and 49-36 "define and delimit the fund to which a properly noticed mechanic's lien may attach. Both of these sections start with the proposition that no mechanic's lien may attach to any building or land in an amount greater than the price which the owner has agreed to pay the general contractor for the building being erected or improved. The amount may be diminished . . . by bona fide payments, as defined in section 49-36, made by the owner . . . before receiving notice of [the mechanic's] lien or liens." (Citation omitted; internal quotation marks omitted.) *Rene Dry Wall Co.* v. *Strawberry Hill Associates*, 182 Conn. 568, 571–72, 438 A.2d 774 (1980); see also *W. G. Glenney Co.* v. *Bianco*, 27 Conn. App. 199, 205, 604 A.2d 1345 (1992).

The court found that the original contract price was $94,000 and that Flanagan Builders was paid that amount by the defendant. The court also found, however, that due to modifications to the plans made along the way, or "extras," the price increased and the defendant still owed Flanagan Builders $10,800 for the project. These determinations find ample support in the

a greater amount in the whole than the price which the owner agreed to pay for the building and its appurtenances or the development of any such lot, or the development of any such plot of land. . . .

"(c) In determining the amount to which any lien or liens may attach upon any land or building, or lot or plot of land, the owner of the land or building or lot or plot of land shall be allowed whatever payments he has made, in good faith, to the original contractor or contractors, before receiving notice of the lien or liens. No payments made in advance of the time stipulated in the original contract may be considered as made in good faith, unless notice of intention to make the payment has been given in writing to each person known to have furnished materials or rendered services at least five days before the payment is made."

record, specifically Flanagan's trial testimony. There was no conflicting testimony or evidence presented as to the existence or amount of the unpaid debt. In light of the foregoing, the court's factual finding that the defendant still owed $10,800 under the general contract was not clearly erroneous.

The lienable fund is limited to "the unpaid contract debt owed by the owner to the general contractor." *Seaman* v. *Climate Control Corp.*, supra, 181 Conn. 602. Because the court properly found that there was unpaid contract debt, a lienable fund exists. Accordingly, the defendant's argument that the lien is invalid for lack of a lienable fund because he paid the original contract price must fail.

### III

Finally, the defendant claims that the court improperly applied the statutes and case law regarding the subrogation of subcontractors' claims. He claims that, because the underlying contract violates General Statutes § 20-429 (a),[6] it is unenforceable against him by Flanagan Builders and there is therefore no lienable fund from which the plaintiff can collect. We disagree.

---

[6] General Statutes § 20-429 (a) provides in relevant part: "No home improvement contract shall be valid or enforceable against an owner unless it: (1) Is in writing, (2) is signed by the owner and the contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor and the contractor's registration number, (6) contains a notice of the owner's cancellation rights in accordance with the provisions of chapter 740, (7) contains a starting date and completion date, (8) is entered into by a registered salesman or registered contractor, and (9) includes a provision disclosing each corporation, limited liability company, partnership, sole proprietorship or other legal entity, which is or has been a home improvement contractor pursuant to the provisions of this chapter or a new home construction contractor pursuant to the provisions of chapter 399a, in which the owner or owners of the home improvement contractor are or have been a shareholder, member, partner, or owner during the previous five years. . . ."

The act is a consumer protection statute. Its purpose is "to promote understanding by the consumer, to ensure his ability to make an informed decision and to protect him from substantial work by an unscrupulous contractor." *Habetz* v. *Condon*, 224 Conn. 231, 239, 618 A.2d 501 (1992). The act requires that home improvement contractors register with the commissioner of consumer protection and that a home improvement contract include certain provisions to be valid and enforceable. General Statutes §§ 20-420 and 20-429. It also prohibits a home improvement contractor from enforcing any home improvement contract made with a homeowner that fails to adhere to the statutory requirements. *MJM Landscaping, Inc.* v. *Lorant,* 268 Conn. 429, 435, 845 A.2d 382 (2004). Subcontractors do not fall within the statutory definition of home improvement contractor, and they are therefore not required to register nor are they required to enter into valid home improvement contracts. *Meadows* v. *Higgins,* 249 Conn. 155, 165–68, 733 A.2d 172 (1999).

The court in the present case determined that it would be inequitable to subject the plaintiff to the terms of a contract to which it was not a party. It determined that the subrogation language of § 49-33 (f) was created solely for the purpose of protecting homeowners and should be interpreted to protect homeowners from double liability or liability beyond the contract price. The court concluded that, because the doctrine of subrogation is flexible, the subrogation language in § 49-33 (f) should not be interpreted to bar claims of subcontractors who were not involved in the formation of an invalid contract between the general contractor and the homeowner.

The court's interpretation of § 49-33 (f) is an issue of law subject to plenary review. *Ceci Bros., Inc.* v. *Five Twenty-One Corp.,* 51 Conn. App. 773, 776, 724 A.2d 541 (1999). Likewise, whether the act applies to

the facts of this case is a matter of statutory construction over which we exercise plenary review. *Meadows* v. *Higgins*, supra, 249 Conn. 162.

"[T]he guidelines for interpreting mechanic's lien legislation are . . . well established. Although the mechanic's lien statute creates a statutory right in derogation of the common law . . . its provisions should be liberally construed in order to implement its remedial purpose of furnishing security for one who provides services or materials. . . . Our interpretation, however, may not depart from reasonable compliance with the specific terms of the statute under the guise of a liberal construction." (Internal quotation marks omitted.) *Rollar Construction & Demolition, Inc.* v. *Granite Rock Associates, LLC,* supra, 94 Conn. App. 129. "A subcontractor's right to claim a lien against a property owner with whom he is not in privity was created because the subcontractor has furnished material or labor to or for the contractor which has gone into the owner's building." (Internal quotation marks omitted.) *H & S Torrington Associates* v. *Lutz Engineering Co.,* 185 Conn. 549, 553, 441 A.2d 171 (1981).

Assuming without deciding that the defendant is correct in his assertion that the underlying contract does not meet the requirements of § 20-429 (a),[7] we do not agree that this is a bar to the plaintiff's right to recover against him under the mechanic's lien statute. The defendant has provided no authority to support his proposition that when a general contractor's lien is unenforceable for a lack of compliance with the act, the subcontractor's lien also is unenforceable. Indeed, our trial courts consistently have rejected the proposition. See, e.g., *White* v. *Edwards,* Superior Court, judicial district of New Haven, Docket No. CV-00-0437477-S (June 9, 2000); *Fromm* v. *FAS Designer & Builders,*

[7] Flanagan Builders is not a party to this action, and we do not determine in this matter whether it would be precluded from enforcing its contract with the defendant.

*Inc.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-97-0160094-S (March 16, 1998) (21 Conn. L. Rptr. 494); *Fink* v. *Olson*, Superior Court, judicial district of Fairfield, Docket No. CV-96-0335948-S (November 19, 1996) (18 Conn. L. Rptr 259); *Torre Builders* v. *Steven*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-92-0121684-S (October 21, 1992) (7 Conn. L. Rptr. 491); *Baxter* v. *Quoka*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-90-031911-S (July 3, 1990) (1 Conn. L. Rptr. 817); see also D. Rosengren, 13 Connecticut Practice Series: Construction Law (2005) § 8.5, p. 175 ("[W]hen a construction contract is unenforceable due to a violation of [the act], any lien held by the contractor is invalid. However, any subcontractor holding a lien will still be able to enforce it, as [the act] does not apply to subcontractors, and the validity of a subcontractor's lien will not be affected by the validity of a contractor's lien."). To hold otherwise would expand the subrogation language of § 49-33 and impute additional conditions on subcontractors' liens. It would also be a de facto application of the requirements of the act to subcontractors, a group clearly excluded from complying with the act. See *Meadows* v. *Higgins*, supra, 249 Conn. 165–68. There is nothing in either the mechanic's lien statutes or the act to indicate that the legislature intended such a result.

The subrogation language of § 49-33 (f) certainly requires that subcontractors' liens be invalidated where there is no unpaid contract debt owed to the general contractor from the owner. *Seaman* v. *Climate Control Corp.*, supra, 181 Conn. 601–602; *W. G. Glenney Co.* v. *Bianco*, supra, 27 Conn. App. 201. But where, as here, there is unpaid contract debt and the defendant asserts speculatively that the general contractor would be

unable to collect that debt because of a separate statutory regime that does not apply to subcontractors, subrogation principles are not a bar to the validity of the plaintiff's lien.

The judgment is affirmed and the case is remanded for the purpose of setting a new sale date.

In this opinion the other judges concurred.