ABSOLUTE PLUMBING AND HEATING, LLC *v.*
ALISON EDELMAN ET AL.

JR REMODELING, LLC *v.* ALISON EDELMAN ET AL.
(AC 34438)

DiPentima, C. J., and Sheldon and Flynn, Js.

Argued January 17—officially released October 15, 2013

*Edward Kanowitz*, for the appellants (defendants in both cases).

*Lorey Rives Leddy*, with whom, on the brief, was *Brendan J. O'Rourke*, for the appellees (plaintiff in each case).

*Opinion*

DiPENTIMA, C. J. This appeal arises from consolidated actions brought by subcontractors to foreclose on mechanic's liens placed on the defendant's property to secure the value of their labor and services on a home improvement project. The defendant, Alison Edelman, individually and as executrix of the estate of her mother, Claudia Pearl,[1] appeals from the trial court's judgment

---

[1] Pearl was a defendant in the underlying actions filed by the plaintiffs to foreclose their mechanic's liens. After the commencement of these actions, but before trial, Pearl died in 2008. Thereafter, the trial court substituted Edelman, in her capacity as executrix of Pearl's estate, as a party defendant on March 10, 2010. For the sake of clarity, we refer in this opinion to Edelman as the defendant in both her individual and representative capacities.

accepting a report by the attorney trial referee (referee) awarding damages, interest, and attorney's fees to the plaintiff subcontractors,[2] Absolute Plumbing & Heating, LLC (Absolute Plumbing), and JR Remodeling, LLC (JR Remodeling). On appeal, the defendant claims that the trial court improperly adopted the referee's report because (1) it failed to consider the applicability of the Home Improvement Act (act), General Statutes § 20-418 et seq., to the validity of the plaintiffs' liens, and (2) the evidence presented did not support either the referee's factual finding as to the contract price agreed to by the defendant and the general contractor or his finding that the construction work agreed to under the contract had been substantially completed. The defendant further claims that the trial court improperly awarded attorney's fees to the plaintiffs. We affirm in part and reverse in part the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. On December 27, 2005, the defendant entered into a contract with Schott Construction, LLC (Schott), as general contractor, to make renovations on the residential property located at 51 Maple Avenue North in Westport (property). The contract stated an estimated total price of $454,341.80. Over the course of construction, the contract was modified, in accordance with its terms, by numerous "construction summaries." These summaries reflected additions to the scope of the project and corresponding increases in the contract price, which had been discussed with and orally agreed to by the defendant. After becoming dissatisfied with the general contractor's performance, the defendant terminated the contract with Schott on September 19, 2006. The defendant subsequently hired

[2] Three additional subcontractors, Greco Construction, Herb Willigan Electrical, and WK Coley Construction, filed actions against the defendant concerning the same home improvement project. These subcontractors are not parties to the present appeal.

other general contractors, DeFelice Contracting (DeFelice) and Bella Cucina Design, LLC, to continue and expand the work on the project.

During the course of its work on the project, Schott engaged the plaintiffs as subcontractors to perform work on the premises. Absolute Plumbing was hired to perform the heating and plumbing work and JR Remodeling was hired to perform the carpentry work. The defendant was aware that this work was being performed by the plaintiffs. When the defendant unilaterally terminated the contract with Schott, she directed the plaintiffs to leave the premises. After the contract was terminated, Schott sent a letter to the defendant on October 13, 2006, demanding full payment under the terms of the contract. The amount so demanded included $16,837.20 that Schott owed to Absolute Plumbing and $9460 that it owed to JR Remodeling for work performed by them on the project. The defendant took no action in response to this demand letter. The plaintiffs subsequently filed separate certificates of mechanic's lien for the amounts they were owed for their work on the project.[3] In December, 2007, the plaintiffs brought separate actions to foreclose on their respective mechanic's liens, which the defendant answered by denying all liability. Additional facts will be set forth as necessary.

The plaintiffs' separate actions were consolidated by a March 10, 2010 court order.[4] The parties then elected to proceed to trial before an attorney trial referee on August 13, 2010. On the first day of trial, the defendant sought to file special defenses, alleging that they had

---

[3] Schott also had filed a mechanic's lien against the property, but the defendant's application to discharge that lien was granted by the court, *Tobin, J.*, on April 16, 2007, on the basis of its determination that modifications to the contract between the defendant and Schott did not comply with the act.

[4] See footnote 2 of this opinion.

paid Schott in excess of the contract price and that the plaintiffs had not properly presented their claims to the defendant as executrix of the estate of Pearl. Upon the plaintiffs' objection the referee did not allow the special defenses, finding the request untimely and procedurally defective. Thereafter, the referee concluded that the plaintiffs were entitled to the foreclosure of their mechanic's liens. The referee found that the defendant owed Absolute Plumbing a total of $30,192.49 and JR Remodeling a total of $18,635.74, which sums included amounts for their respective liens and costs, plus pre-judgment interest of 10 percent per year from September 19, 2006. Finally, the referee determined that the plaintiffs were entitled to attorney's fees, but made no findings as to the amounts of those fees.

Pursuant to Practice Book § 19-14, the defendant objected to these findings of fact and to the acceptance of the referee's report, claiming that no lienable fund existed from which the plaintiffs could recover. The defendant also contended that the referee should have applied the act to its analysis of the plaintiffs' actions and that the referee improperly determined that (1) the plaintiffs had made proper service of process upon her, (2) the liens were in the correct amounts, (3) Schott's work under the contract had been substantially completed, and, therefore, the liens were enforceable, and (4) the plaintiffs were entitled to attorney's fees. In its June 9, 2011 memorandum of decision, the trial court accepted the referee's report with respect to all findings therein, but did not determine the issue of attorney's fees, as the parties had agreed to reserve that issue for a later hearing. The court denied the defendant's subsequent motion to reargue or reconsider that decision.

Following a July 6, 2011 evidentiary hearing on the issue of attorney's fees, the trial court issued a supplemental memorandum of decision. The court awarded

attorney's fees in the amounts of $16,691.50 and $29,707.51 to JR Remodeling and Absolute Plumbing, respectively. This appeal followed.[5]

I

The defendant first claims that the trial court improperly accepted the referee's report because the referee failed to analyze the defendant's claims pursuant to General Statutes § 20-429, which sets forth the contract provisions required under the act.[6]

[5] Before the defendant initiated the present appeal, each plaintiff filed a motion for judgment on February 13, 2012, stating that it was no longer seeking a foreclosure judgment and requesting that the trial court, in accordance with its ruling rendering judgment in accordance with the referee's report, award the plaintiff monetary damages instead. The court granted the motions, and, in each case, awarded the plaintiff monetary damages, prejudgment and postjudgment interest, and attorney's fees. The defendant thereafter filed the present appeal on March 23, 2012.

[6] General Statutes § 20-429 provides in relevant part: "(a) No home improvement contract shall be valid or enforceable against an owner unless it: (1) Is in writing, (2) is signed by the owner and the contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor and the contractor's registration number, (6) contains a notice of the owner's cancellation rights in accordance with the provisions of chapter 740, (7) contains a starting date and completion date, (8) is entered into by a registered salesman or registered contractor, and (9) includes a provision disclosing each corporation, limited liability company, partnership, sole proprietorship or other legal entity, which is or has been a home improvement contractor pursuant to the provisions of this chapter or a new home construction contractor pursuant to the provisions of chapter 399a, in which the owner or owners of the home improvement contractor are or have been a shareholder, member, partner, or owner during the previous five years. Each change in the terms and conditions of a contract shall be in writing and shall be signed by the owner and contractor, except that the commissioner may, by regulation, dispense with the necessity for complying with the requirement that each change in a home improvement contract shall be in writing and signed by the owner and contractor. . . .

"(f) Nothing in this section shall preclude a contractor who has complied with subdivisions (1), (2), (6), (7) and (8) of subsection (a) of this section from the recovery of payment for work performed based on the reasonable value of services which were requested by the owner, provided the court determines that it would be inequitable to deny such recovery."

The standard of review in cases referred to attorney trial referees is well settled. "[B]ecause the attorney trial referee does not have the powers of a court and is simply a fact finder, [a]ny legal [determinations] reached by an attorney trial referee have no conclusive effect. . . . The reviewing court is the effective arbiter of the law and the legal opinions of [an attorney trial referee], like those of the parties, though they may be helpful, carry no weight not justified by their soundness as viewed by the court that renders judgment. . . . [When] legal [determinations] are challenged, [the reviewing court] must determine whether they are legally and logically correct and whether they find support in the facts found by the . . . referee." (Internal quotation marks omitted.) *FCM Group, Inc.* v. *Miller*, 300 Conn. 774, 796, 17 A.3d 40 (2011).

After considering the defendant's arguments submitted in her objection to the acceptance of the referee's report, the trial court, as the reviewing court, concluded that because the defendant had not pleaded the act as a special defense, the referee "cannot be held accountable for failing to make a recommendation to the court as to its applicability." Thus, on our review, the threshold question we must answer is "whether a statute should have been specially pleaded as a defense. Section [10-50] of the Practice Book addresses whether a defense must be specially pleaded. . . . The purpose of § [10-50] is to apprise the court and opposing counsel of the issues to be tried, not to conceal basic issues until the trial is under way . . . .

"When the evidence needed to establish that no cause of action [exists] is consistent with the allegations necessary to establish a prima facie case, a special defense is required. . . . We conclude that the [defendant] should have pleaded the [act] as a special defense." (Citations omitted; internal quotation marks omitted.)

*Sidney* v. *DeVries*, 18 Conn. App. 581, 585–87, 559 A.2d 1145 (1989), aff'd, 215 Conn. 350, 575 A.2d 228 (1990).

We agree with the court's conclusion that the defendant did in the present case not properly plead the act as a special defense. Although the defendant attempted to raise the issue of the act at trial, the referee specifically concluded that "there are no special defenses submitted in this case." As this court has recognized, "a party seeking to utilize the act as a shield to liability must plead it as a special defense. . . . At the same time, a failure to allege a special defense is waived if evidence relating to that special defense is admitted without objection." (Citation omitted; internal quotation marks omitted.) *Brett Stone Painting & Maintenance, LLC* v. *New England Bank,* 143 Conn. App. 671, 690, 72 A.3d 1121 (2013).

No such waiver is present here. To the contrary, the plaintiffs' counsel, Brendan O'Rourke, objected to the defendant's invocation of the act and to her counsel's attempts to submit evidence relating to the discharge of Schott's lien on the ground that it had violated the act. O'Rourke stated that "this defense was not [pleaded] in any way as a special defense to my clients' claims being tried before this court. So this is another example of where I'm being presented with a legal argument that . . . should have been specially [pleaded] so I would be in a position to have been put on notice and be in a position to have addressed it." See *Brett Stone Painting & Maintenance, LLC* v. *New England Bank,* supra, 143 Conn. App. 690–91. In light of the foregoing, the court properly rejected the defendant's claim.

## II

The defendant next claims that the court improperly accepted the referee's report because it contained erroneous factual findings, specifically as to the contract price at the time of termination and as to the fact that

work under the contract had been substantially completed by that time. We are not persuaded.

"The trial court's findings of fact were based entirely on the record of the proceedings before the attorney trial referee. Under these circumstances, application of the clearly erroneous test must reflect the special rules that govern judicial review of a report of an attorney referee. While the reports of [attorney trial referees] in such cases are essentially of an advisory nature, it has not been the practice to disturb their findings when they are properly based upon evidence, in the absence of errors of law, and the parties have no right to demand that the court shall redetermine the fact thus found. . . . A reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. . . . This court has articulated that attorney trial referees and factfinders share the same function . . . whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court. . . . [T]he trial court may not retry the case and pass on the credibility of the witnesses . . . ." (Citations omitted; internal quotation marks omitted.) *Johnson Electric Co.* v. *Salce Contracting Associates, Inc.*, 72 Conn. App. 342, 345, 805 A.2d 735, cert. denied, 262 Conn. 922, 812 A.2d 864 (2002).

## A

The defendant contends that the court improperly adopted the referee's finding of the contract price owed to Schott at the time the contract was terminated because it was clearly erroneous. She further argues that because this finding was clear error, no lienable

fund existed to sustain the plaintiffs' liens. We are not persuaded.

The following additional facts are relevant to the resolution of this claim. The contract states: "The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum shall be: $454,341.80, subject to additions and deductions as provided in the Construction Summary." On the basis of the evidence presented at trial, the referee found that at the time the contract was terminated, the defendant and Pearl had paid $503,755.63 toward the contract price, but that the modified contract price then amounted to $605,458.83, the sum listed on the latest construction summary that had been approved by the parties. The referee determined, therefore, that the unpaid debt to Schott amounted to approximately $100,000, the difference between the amount paid and the modified contract price. The referee further found that the construction summaries reflected that Schott employed the plaintiffs, which was discussed with and approved by the defendant. Ultimately, the referee found that the defendant agreed that the plaintiffs were entitled to payment under the construction contract for their work.

The defendant maintains that the original contract price, approximately $454,342, should be used to measure damages because the modifications to the contract were deemed invalid pursuant to the act during a prior action to discharge Schott's mechanic's lien. In discharging Schott's lien, the court, *Tobin, J.*, had found that the contract modifications made by the construction summaries were invalid with respect to Schott's claim that it was owed the modified contract price because the modifications did not comply with the requirements of the act, in that, they were not made in a writing signed by both parties. The defendant argues that because the contract modifications were deemed

invalid in the prior proceeding, the plaintiffs in the present case may not rely on the modified contract price found by the referee.

Our review of the referee's legal conclusion that the contract price modification was valid with respect to the plaintiffs' liens is plenary. See *FCM Group, Inc.* v. *Miller*, supra, 300 Conn. 796. As we recently affirmed in *ProBuild East, LLC* v. *Poffenberger*, 136 Conn. App. 184, 45 A.3d 654 (2012), although the act applies to general contractors, it does *not* apply to subcontractors. "Subcontractors do not fall within the statutory definition of home improvement contractor, and they are therefore not required to register nor are they required to enter into valid home improvement contracts. *Meadows* v. *Higgins*, 249 Conn. 155, 165–68, 733 A.2d 172 (1999)." *ProBuild East, LLC* v. *Poffenberger*, supra, 194.

"Assuming without deciding that the defendant is correct in his assertion that the underlying contract does not meet the requirements of [the act], we do not agree that this is a bar to the plaintiff's right to recover against him under the mechanic's lien statute. The defendant has provided no authority to support his proposition that when a general contractor's lien is unenforceable for a lack of compliance with the act, the subcontractor's lien also is unenforceable." (Footnote omitted.) Id., 195. The parties in the present appeal agree that the plaintiffs are subcontractors. Thus, the trial court was not precluded from accepting the referee's finding of the modified contract price on the basis that Schott's lien had been deemed invalid during a prior proceeding.

Furthermore, the referee's determination of the final contract price between Schott and the defendant was based on ample evidence presented at trial. In arriving at this figure, the referee considered testimony and exhibits concerning expansions to the original scope

of the contract, including adding a new bathroom, new windows and exterior doors, a new roof, and a new floor for the master bedroom. The record also contains updated architectural drawings that were submitted to the town of Westport on the basis of the expanded home improvement project.

The evidence of record demonstrates that the parties had agreed that the contract was subject to revision and that there were subsequent modifications to the contract between the defendant and Schott. Joseph Schott, the principal of Schott, testified that he reviewed all such modifications with the defendant by going over "construction summaries" with her, and that he had obtained her oral consent before increasing the contract price and proceeding with the construction following each modification. Accordingly, the evidence presented at trial is sufficient to support the referee's finding that the contract price at the time Schott was terminated was the modified price of $605,459. On the basis of this record, and because the trial court may not retry the case and make credibility determinations; see *Johnson Electric Co.* v. *Salce Contracting Associates, Inc.*, supra, 72 Conn. App. 345; the referee's finding of the modified contract price was not clear error, and, therefore, was properly accepted by the trial court.

The defendant further argues that because the referee's determination of the contract price was clear error, no debt was owed to Schott, and, therefore, no lienable fund existed. Although "[t]he subrogation language of [General Statutes] § 49-33 (f) certainly requires the subcontractors' liens be invalidated where there is no unpaid contract debt owed to the general contractor from the owner"; *ProBuild East, LLC* v. *Poffenberger*, supra, 136 Conn. App. 196; because we have determined that the court properly accepted the referee's finding of the modified contract price, it follows that, at the time the contract was terminated, there was unpaid

contract debt of approximately $100,000. Because the court properly determined that there was unpaid contract debt, a lienable fund exists from which the plaintiffs can satisfy their claims. While Schott is barred from collecting this debt due to its failure to comply with the act, the plaintiffs are not similarly constrained.

B

The defendant next claims that the referee's finding that the work on the property performed pursuant to the contract was substantially completed was clearly erroneous. We disagree.

"Substantial performance contemplates the performance of all items of a building contract except for minor details, those easily remedied by minor expenditures. . . . Whether a building contractor has met this standard is ordinarily a question of fact for the trier. . . . Our review of this claim is therefore limited to a determination of whether, based on the record, the referee's finding of no substantial performance is clearly erroneous." (Citations omitted.) *Argentinis* v. *Gould*, 23 Conn. App. 9, 14, 579 A.2d 1078 (1990), rev'd in part on other grounds, 219 Conn. 151, 592 A.2d 378 (1991).

"[I]n a foreclosure of a mechanic's lien, a contractor is entitled to the value of the materials that it furnished or the services that it rendered in the construction of a project. . . . [T]he substantial performance doctrine is not the only method available for ascertaining that value. The reasonable value of the materials and services can be proven by: (1) providing evidence that the contract price represents the value of a contractor's materials and services; *Dreambuilders Construction, Inc.* v. *Diamond*, 121 Conn. App. 554, 562, 997 A.2d 553 (2010); (2) demonstrating the contractor substantially performed such that the contract is the proper valuation of its materials and services; *M. J. Daly & Sons, Inc.*

v. *New Haven Hotel Co.*, 91 Conn. 280, 286–87, 99 A. 853 (1917); see also *Intercity Development, LLC* v. *Andrade*, [96 Conn. App. 608, 614, 901 A.2d 731 (2006)] ([w]ithout a finding that the plaintiff substantially performed its contract, there can be no right to recover under the mechanic's lien statute with reference to the contract price), [rev'd in part on other grounds, 286 Conn. 177, 942 A.2d 1028 (2008)]; or (3) submitting evidence of the cost to complete the work." (Citation omitted; internal quotation marks omitted.) *E & M Custom Homes, LLC* v. *Negron*, 140 Conn. App. 92, 104–105, 59 A.3d 262, cert. granted on other grounds, 308 Conn. 912, 61 A.3d 1099 (2013).

The evidence of record in this case reveals testimony from Joseph Schott and DeFelice, in addition to the various subcontractors, concerning the amount of construction that had been completed on the project by the time Schott was terminated. For instance, Joseph Schott testified that when he was terminated from the project, it was 90 to 95 percent complete. DeFelice testified that "[m]ost of the work was done. . . . I just had to come and finish it and get [the defendant] in. . . . [Schott] did a great job, they did. Except for mechanical parts, they did a good job. The house was sound, roof structure great. I mean the walls were fine. Everything was good. Except for the *minor* things I found but you know, getting [the defendant] in. (Emphasis added.) DeFelice further testified that when he was hired, the entire shell of the addition to the defendant's home and all of the rooms were complete, and he was unaware of the exact scope of the work that Schott had contracted to perform for the defendant. Moreover, the documentary evidence presented at trial contained the construction summaries that Joseph Schott had reviewed orally with the defendant, detailing the work that had been completed up to the date of each summary.

The defendant nonetheless maintains that the testimony and exhibits presented at trial instead demonstrate that the work on the project had not been substantially completed. In support of this argument, she points to the testimony of DeFelice and various subcontractors stating that when they began work on the project, it was incomplete. This testimony, however, is not inconsistent with the referee's finding. The referee did not find that the work on the property had been fully completed, but rather concluded that, pursuant to the terms of the contract between the parties, the work had been *substantially* completed.

In arguing that the project was not substantially completed, the defendant also cites the alleged costs incurred to complete the project by hiring other general contractors.[7] Further, she argues that the contents of

---

[7] The defendant further contends that the referee also improperly failed to consider the cost of completion of the home improvement project in determining the value of the plaintiffs' liens. According to this court's analysis in *Intercity Development, LLC* v. *Andrade*, supra, 96 Conn. App. 613, "in a foreclosure of a mechanic's lien . . . if it is found that the contractor substantially performed the contract, the court may determine the amount of the mechanic's lien by deducting the sum representing the cost of completion from the balance due on the contract." (Citation omitted; footnote omitted.) The defendant in the present case alleges that the cost of completing the project was approximately $282,790, which sum should have been deducted from the balance owed on the contract.

"In making its assessment of damages for breach of [any] contract the trier must determine the existence and extent of any deficiency and then calculate its loss to the injured party. The determination of both of these issues involves a question of fact which will not be overturned unless the determination is clearly erroneous." (Internal quotation marks omitted.) *Southington* v. *Commercial Union Ins. Co.*, 71 Conn. App. 715, 743, 805 A.2d 76 (2002). Our careful review of the record reveals that the defendant did not provide evidence sufficient to determine the cost of completing the home improvement project, as it is unclear from the record what portion of the payment made to DeFelice was provided in compensation for work that Schott had previously agreed to perform (the cost of completion) and what part of the payment was for additional renovations and changes to the property. Although the referee did not make a specific finding regarding the cost of completion, on the basis of the evidence, we cannot conclude that the referee's damages award was clearly erroneous.

the construction summaries reveal details that remained uncompleted after Schott's termination, such as obtaining and installing carpentry, plumbing fixtures, bathroom countertops, electrical fixtures, a driveway, a garage door, appliances, and accessories. When making his findings, the referee considered all of the aforementioned testimony and evidence. On the basis of the evidence, he determined that "substantially all of the work required to be done by Schott under the construction contract . . . had been completed." The referee specifically noted that in reaching his conclusion, he had relied upon the "credible" testimony of Robert Sztachelski, the principal of JR Remodeling, and Stanley Bike, the principal of Absolute Plumbing, who stated that the plaintiffs' respective work had been "completed in a good and workmanlike manner."

In adopting the referee's findings, the trial court determined that there was "testimony in the record to support the referee's acceptance of the claim that the work had been substantially performed." Although the record does contain some evidence suggesting that more than minor details on the project were incomplete at the time that Schott was terminated, the referee was in the best position to evaluate this evidence and to determine the credibility of the witnesses. The trial court may not retry the case and make such credibility determinations. See *Southington* v. *Commercial Union Ins. Co.*, 71 Conn. App. 715, 743, 805 A.2d 76 (2002). Accordingly, the court properly accepted the factual finding of the referee that the work on the defendant's property performed pursuant to the contract was substantially completed.

### III

The defendant finally claims that the trial court improperly awarded attorney's fees to the plaintiffs. The defendant does not challenge the referee's authority to

award attorney's fees pursuant to General Statutes § 52-249 (a), but rather argues that the trial court's awards of attorney's fees were unreasonable because of the court's reliance on a joint representation agreement entered into by O'Rourke, Schott, and the plaintiffs, as well as various other subcontractors that had worked on the project. Specifically, the defendant claims that (1) the agreement violates public policy and (2) the court improperly failed to include Schott's lien in the pro rata allocation of the fees, thereby awarding a greater share of the fees to the plaintiffs. We are not persuaded by the first claim, but as to the second, we conclude that the court was mistaken in its reasoning for excluding Schott's lien. Accordingly, we reverse the judgment of the court awarding attorney's fees to the plaintiffs and remand the case for further proceedings.

The following additional facts are relevant to the resolution of this issue. In March, 2007, the plaintiffs, Schott, and the additional subcontractors that were parties to the underlying actions entered into a "joint representation agreement" with O'Rourke, who agreed to provide representation to all parties in connection with the defendant's applications to discharge the mechanic's liens held by those parties on the property. The agreement explained the potential conflict of interest in O'Rourke's joint representation and provided that Schott would pay for the fees and costs incurred in connection with O'Rourke's representation. The agreement further provided that if Schott failed to pay any of these fees, the subcontractors would be responsible for paying them on a pro rata basis, in amounts to be determined by comparing the amounts of their individual liens with the total sum of all liens on the subject property.

In his memorandum of decision, the referee cited *Original Grasso Construction Co.* v. *Shepherd*, 70 Conn. App. 404, 418, 799 A.2d 1083, cert. denied, 261

Conn. 932, 806 A.2d 1065 (2002), for the proposition that "General Statutes § 52-249 (a)[8] succinctly and unambiguously provides for the allowance of attorney's fees in actions for foreclosure of mortgages or liens." (Internal quotation marks omitted.) On the basis of this statutory authority, the referee concluded that the plaintiffs were entitled to attorney's fees, but did not determine the amount of those fee awards in his decision.

At the August 18, 2011 evidentiary hearing on attorney's fees, the trial court affirmed the referee's decision that the plaintiffs were entitled to attorney's fees and determined the amount of each award.[9] The court thereafter awarded attorney's fees of $16,691.50 to JR Remodeling and $29,707.51 to Absolute Plumbing.

It is well established that we review the trial court's decision to award attorney's fees for abuse of discretion. "Whether any award is to be made and the amount thereof lie within the discretion of the trial court, which is in the best position to evaluate the particular circumstances of a case. . . . A court has few duties of a more delicate nature than that of fixing counsel fees. The issue grows even more delicate on appeal; we may not alter an award of attorney's fees unless the trial

[8] General Statutes § 52-249 provides in relevant part: "(a) The plaintiff in any action of foreclosure of a mortgage or lien, upon obtaining judgment of foreclosure, when there has been a hearing as to the form of judgment or the limitation of time for redemption, shall be allowed the same costs, including a reasonable attorney's fee, as if there had been a hearing on an issue of fact. . . ."

[9] In making this determination, the court relied in part on the joint representation agreement. The court found that "the agreement by its terms seems to be limited in scope to representation . . . in connection with the applications to discharge mechanic's liens that have been filed by the [defendant] . . . . [T]he parties [however] have treated the document as applying to every other aspect the parties dispute, including the proceeding before the [referee]. The court will likewise do so." (Internal quotation marks omitted.) In the present appeal, neither the plaintiffs nor the defendant challenge the court's broad treatment of the joint representation agreement.

court has clearly abused its discretion . . . . Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Citation omitted; internal quotation marks omitted.) *Ernst* v. *Deere & Co.*, 92 Conn. App. 572, 575–76, 886 A.2d 845 (2005).

## A

The defendant first argues that the joint representation agreement violated public policy and therefore is void. Specifically, she contends that Schott has no direct interest in the outcome of her litigation with the plaintiffs, and, therefore, its payment of the plaintiffs' attorney's fees violates public policy because Schott "improperly benefits from the litigation that [it] finances." We disagree.

The defendant bases her claim entirely on the rule set forth by our Supreme Court in *Rice* v. *Farrell*, 129 Conn. 362, 28 A.2d 7 (1942). As explained in *Rice*, "[t]he situation, however, where one having a right he desires to assert asks another to assist in the necessary litigation, differs essentially from that where a person having no interest in the subject matter of the controversy instigates legal proceedings and offers to pay the expenses in return for a benefit he is to receive if the litigation is successful. Beyond sustaining agreements falling within the principles of these cases, we have never gone." Id., 366. As correctly interpreted by the trial court, the rule set forth in *Rice* is essentially that "as long as a party who is financing the litigation has any interest great or small, certain or uncertain, in the subject matter of the suit of another which was not

acquired as the result of an agreement to aid in the maintenance of the suit, it is not against public policy for him to render such aid." The resolution of the defendant's claim, then, rests on a determination of Schott's interest in the present litigation.

The joint representation agreement states that "[Schott] has obligations to each of the other companies for subcontracting work that was hired for the project being constructed at the [defendant's] premises . . . ." In its memorandum of decision, the trial court reasoned that "[b]ecause Schott owed the subcontractor signatories balances for the work they performed on the premises, it had a direct, immediate financial interest in limiting his losses by entering into an agreement whereby he assumed the primary obligation to pay all of the attorney's fees incurred in the litigation . . . ." (Internal quotation marks omitted.) We agree with the court's conclusion.

The benefit Schott stood to receive from agreeing to finance the plaintiffs' litigation, namely, keeping the plaintiffs from making claims against it, is clearly an interest of the sort contemplated by the court in *Rice.* By paying for the plaintiffs' attorney's fees, Schott does not receive an additional monetary benefit from the outcome of the litigation; rather his payment satisfies preexisting debts owed to the plaintiffs for work performed on the defendant's property. Thus, the defendant's argument that the joint representation agreement violates public policy has no merit.

### B

The defendant next claims that the court miscalculated the amount of attorney's fees owed to the plaintiffs by modifying the joint representation agreement.[10] We

---

[10] We note that the defendant does not challenge the reasonableness of the fees incurred by O'Rourke or the various hourly rates charged by his associates. The defendant instead contends that the plaintiffs did not actually incur any attorney's fees, because Schott paid all such fees. The defendant cites testimony explaining that pursuant to the joint representation

agree that the court abused its discretion in awarding attorney's fees because its rationale for doing so constituted an erroneous application of law.

The evidence before the court included an affidavit submitted by O'Rourke, as well as his testimony explaining the pro rata calculations he had used to bill each of his clients.[11] O'Rourke's affidavit explained that after Schott's lien was discharged, he no longer counted that lien toward the aggregate total, but also that he had deducted $6500 from the total attorney's fees owed pursuant to the joint representation agreement, as those fees were allocable to the work performed solely in his representation of Schott before its lien was discharged. O'Rourke testified that he had made a similar adjustment after another subcontractor, WK Coley Construction, was no longer being represented.

The trial court concluded that because Schott's lien was invalid at the time it was created, "the discharge of the lien by the court acted retrospectively, relating back to the date of the contract and to the lien which was based on the contract. This analysis leads necessarily to the conclusion that at the time of the [joint representation] agreement . . . Schott's lien was invalid and void and therefore cannot be included in the pool of available pro rata fee shares contemplated by the agreement."

---

agreement, Schott was responsible for the attorney's fees, but aside from the bald assertion that the fees had been paid, presents no support for this argument. Accordingly, we decline to review the defendant's claim because it is inadequately briefed. See *Paoletta* v. *Anchor Reef Club at Branford, LLC*, 123 Conn. App. 402, 406, 1 A.3d 1238, cert. denied, 298 Conn. 931, 5 A.3d 491 (2010).

[11] Each subcontractor's joint representation agreement provided in relevant part that: "[T]he legal fees and costs that will be incurred in connection with my representation has been agreed to be paid by [Schott]. If for any reason [Schott] fails to pay my invoices, each [subcontractor] agree[s] to be responsible for such invoices on a pro rata basis determined by the amount of your subcontractor's lien versus the aggregate of all of the liens."

We do not agree with the court's analysis of this issue. Although Schott's lien was deemed invalid because the contract modifications violated the act, the lien was not discharged until after the joint representation agreement was signed. O'Rourke's representation on behalf of Schott, therefore, generated attorney's fees allocable to Schott pursuant to the agreement. Accordingly, the discharge of Schott's lien did not necessarily lead to the removal of that lien from the aggregate total of all the liens for purposes of calculating attorney's fees.

The conclusion that the Schott lien was invalid, and therefore excludable, was the sole basis for the court's calculation of attorney's fees. As previously noted, the court has authority to make reasonable awards of attorney's fees pursuant to § 52-249 (a). See *Total Recycling Services of Connecticut, Inc.* v. *Connecticut Oil Recycling Services, LLC*, 308 Conn. 312, 327, 63 A.3d 896 (2013). Such an award, however, must be based on findings made by the trial court. In the present case, the court made no findings, based on O'Rourke's testimony or otherwise, regarding its calculation and allocation of the respective attorney's fees among the plaintiffs. Accordingly, we conclude that further proceedings are needed to determine whether attorney's fees should be awarded and, if so, the amount of those fees.

The judgment is reversed in part and the case is remanded for further proceedings on the issue of attorney's fees in accordance with this opinion. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.