******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

GENERATION PARTNERS, L.P., ET AL. *v.*
LLOYD MANDELL
(AC 35042)

DiPentima, C. J., and Sheldon and Flynn, Js.

*Argued October 22, 2013—officially released February 18, 2014*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Hon. Kevin Tierney, judge trial
referee.)

*A. Robert Fischer*, with whom, on the brief, was *Kristin L. Plude*, for the appellants (plaintiffs).

*Hilary B. Miller*, for the appellee (defendant).

*Opinion*

SHELDON, J. In this case, the plaintiffs, Generation Partners, L.P. (Generation Partners), and Generation Capital Partners, L.P. (Generation Capital), claim that they are entitled to receive from the defendant, Lloyd Mandell, a "giveback" of certain funds previously paid to him pursuant to a limited partnership agreement between the parties. The plaintiffs appeal from the trial court's judgment accepting the report of an attorney trial referee (referee) finding in favor of the defendant. The plaintiffs claim that the court erred in (1) failing to apply Delaware law to their claim that the defendant was bound to give the funds at issue back to them even in the absence of a signed partnership agreement, and (2) finding that the plaintiffs had waived their rights to enforce the "giveback obligation" arising under the partnership agreement. We affirm the judgment of the trial court.

After this case was tried before her, the referee found the following relevant facts. In 1996, the defendant became an employee of Generation Partners Management, LLC (Generation Management), a Delaware limited liability company that managed a private equity fund for Generation Capital, which was a Delaware limited partnership. Generation Partners, which was also a Delaware limited partnership, was the general partner of Generation Capital. The defendant was a "special limited partner" of Generation Capital. Generation Capital operated pursuant to a "Limited Partnership Agreement," which provided that Generation Partners would receive "carried interest" payments, which were based upon the estimated profits resulting from Generation Capital's investments. Article 7.7 of the Limited Partnership Agreement contained a "giveback obligation" setting forth the obligations of those individuals, such as the defendant, who also received "carried interest" payments. The Limited Partnership Agreement provided that, in the event that estimated payments of carried interest exceeded the actual value of the carried interest, the recipients must return the overpayments. Section (d) of article 7.7 stated that the giveback obligation "shall be evidenced by a Giveback Agreement" and that Generation Partners "shall cause [the defendant] to execute a Giveback Agreement to or on behalf of the Limited Partners." The defendant disagreed with the terms of the Giveback Agreement, and so refused to sign and execute it. He explained his reasons for refusing to agree to the terms of the Giveback Agreement to an agent of Generation Partners before he received any distributions of carried interest from Generation Capital. Therefore, Generation Partners knew or should have known of the defendant's disagreement with the terms of the Giveback Agreement and his resulting refusal to sign it prior to making any distribution of carried interest to him. The giveback obliga-

tion in the Limited Partnership Agreement was not triggered unless the special limited partner signed the Giveback Agreement, which was a separate agreement that created an obligation that would not otherwise exist. The defendant never executed the Giveback Agreement.

In 2000, in addition to the W-2 wages he received as an employee of Generation Management, the defendant received a payment of $858,639 from Generation Capital as a distribution to him in his capacity as a special limited partner. Thereafter, in 2001, the defendant's employment with Generation Management was terminated. On August 20, 2008, the plaintiffs demanded a giveback from the defendant in the amount of $200,510 from the $858,639 distribution in carried interest he had received in 2000. The defendant has not given back all or any portion of that amount.[1]

On February 26, 2009, the plaintiffs commenced this action against the defendant, seeking to recover the full amount of their alleged overpayment to the defendant, plus interest, by way of a four count complaint, stating claims of breach of contract, unjust enrichment, quantum meruit and statutory theft pursuant to General Statutes § 52-564. In response, the defendant asserted three special defenses: laches, estoppel and waiver; statute of limitations; and a claim that the second and third counts of the complaint fail to state a cause of action upon which relief may be granted. On February 14, 2012, the referee issued a decision recommending that judgment enter in favor of the defendant on all four counts of the plaintiffs' complaint.[2]

The plaintiffs thereafter filed an objection to the referee's report, in which they claimed that several of the referee's factual findings were not supported by the record and that the referee had erred in not applying Delaware law, which, they contend, provides that the defendant had an obligation to repay the giveback amount even in the absence of an executed Giveback Agreement because the giveback obligation of the defendant is fully contained in the Limited Partnership Agreement, which binds the defendant by its terms. The plaintiffs relied upon the Delaware Revised Uniform Limited Partnership Act (act) for the proposition that the lack of a signed Giveback Agreement does not render the provisions of the Limited Partnership Agreement unenforceable.

Following a hearing, the court issued a memorandum of decision in which it concluded that the referee's report was legally and logically correct. The court addressed and rejected the plaintiffs' claim that Delaware law required the defendant to pay the giveback amount. The court concluded that even if Delaware law does not require a signature to enforce a partnership agreement, the Limited Partnership Agreement in this case did expressly require the execution of a separate

Giveback Agreement. The court further concluded that the plaintiffs had waived their right to enforce the terms of the Giveback Agreement by distributing carried interest to the defendant with full knowledge of the defendant's objection to the giveback obligation, and resulting refusal to sign the Giveback Agreement. The court thus rendered judgment in favor of the defendant as recommended by the referee. This appeal followed.

The standard of review in cases referred to attorney trial referees is well settled. "[B]ecause the attorney trial referee does not have the powers of a court and is simply a fact finder, [a]ny legal [determinations] reached by an attorney trial referee have no conclusive effect. . . . The reviewing court is the effective arbiter of the law and the legal opinions of [an attorney trial referee], like those of the parties, though they may be helpful, carry no weight not justified by their soundness as viewed by the court that renders judgment. . . . [When] legal [determinations] are challenged, [the reviewing court] must determine whether they are legally and logically correct and whether they find support in the facts found by the . . . referee." (Internal quotation marks omitted.) *Absolute Plumbing & Heating, LLC* v. *Edelman*, 146 Conn. App. 383, 390, 77 A.3d 889 (2013).

"The trial court's findings of fact were based entirely on the record of the proceedings before the attorney trial referee. Under these circumstances, application of the clearly erroneous test must reflect the special rules that govern judicial review of a report of an attorney referee. While the reports of [attorney trial referees] in such cases are essentially of an advisory nature, it has not been the practice to disturb their findings when they are properly based upon evidence, in the absence of errors of law, and the parties have no right to demand that the court shall redetermine the fact thus found. . . . A reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. . . . This court has articulated that attorney trial referees and factfinders share the same function . . . whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court. . . . [T]he trial court may not retry the case and pass on the credibility of the witnesses . . . ." (Internal quotation marks omitted.) Id., 392. With these principles in mind, we turn to the plaintiffs' claims on appeal.

I

The plaintiffs first claim that the trial court "erred by ignoring Delaware law," which provides that a partner is bound by a partnership agreement whether or not the partner executes the partnership agreement, and thus

that the absence of an executed partnership agreement does not render that agreement unenforceable. See Delaware Revised Uniform Limited Partnership Act, Del. Code Ann. tit. 6, § 17-101 (12) (2012). The trial court did not, in fact, ignore Delaware law, but, rather, rejected the plaintiffs' claims in spite of Delaware law.

As the plaintiffs contend, the act provides that the failure of an executed partnership agreement does not, pursuant to the act, render a partnership agreement unenforceable. As the court pointed out, however, the Limited Partnership Agreement here at issue expressly required the execution of a separate Giveback Agreement to trigger the giveback obligation set forth in the Limited Partnership Agreement. Thus, even if the lack of a signed partnership agreement does not render that agreement unenforceable pursuant to the act, the Limited Partnership Agreement in this case, upon which the plaintiffs have based this cause of action, imposed upon the plaintiffs the duty to obtain from each limited partner a separate executed Giveback Agreement. Because the plaintiffs failed to fulfill their obligation to obtain an executed Giveback Agreement from the defendant, as required under the Limited Partnership Agreement, their claim must fail.

## II

The plaintiffs also claim that the court erred in concluding that they waived their right to enforce the giveback obligation. Although the plaintiffs attempt to cast this claim as a legal challenge to the choice of law employed by the trial court, they are essentially attacking the underlying factual findings made by the referee. The court found, and we agree, that much of the plaintiffs' argument "is devoted to characterizing and restating the facts and evidence in an attempt to recast them in a light favorable to [their] position, often in contradiction to the findings of the . . . referee." The plaintiffs are essentially challenging the referee's factual determination, upon which the trial court based its conclusion, "that the actions of the plaintiffs when they distributed the funds to [the defendant] were taken at the time that they knew that [the defendant] had not executed the Giveback Agreement and that [the defendant] had objected to the Giveback Agreement all before the payments were made." In support of this claim, the plaintiffs suggest that the defendant's testimony did not have the import attributed to it by the referee. The plaintiffs cite to various portions of the defendant's testimony and to the testimony of other witnesses in an attempt to undermine the referee's factual findings. It is well settled, however, that it is not the role of this court, nor is it the role of the trial court, to second guess the finding of the referee as to the credibility of the witnesses. The court properly declined to retry the case or revisit issues of credibility decided by the referee. The court found, and we agree, that

"there is evidence in the record that supports each and every one of the findings of fact and legal conclusions made by the [referee]." Accordingly, the plaintiffs' claim in this regard also fails.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The parties stipulated that, as of September 30, 2011, the correct giveback amount owed by the defendant, as alleged by the plaintiffs, was $219,702.

[2] The referee further recommended that the defendant's special defenses, claiming statute of limitations and that the second and third counts of the plaintiffs' complaint were legally insufficient, be rejected. The referee did not make any recommendations concerning the defendant's claim of laches or estoppel. Those findings are not challenged in this appeal.