******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STRAZZA BUILDING AND CONSTRUCTION,
INC. *v.* JENNIFER G. HARRIS,
TRUSTEE, ET AL.
(AC 43958)

Moll, Alexander, and Vertefeuille, Js.

*Syllabus*

The defendants H and T appealed from the judgment of the trial court
denying their motion for summary judgment against the plaintiff, S Co.
H served as trustee for T, a trust that owned certain real property where
she resided. The defendants hired S Co. as a general contractor for
renovations to the home located on the property, and, after a dispute,
the defendants terminated S Co. S Co. and two subcontractors, R Co.
and I Co., filed mechanic's liens claiming unpaid balances. H, as trustee
for T, initiated a separate action against R Co. seeking to reduce or
discharge R Co.'s lien. S Co. subsequently commenced this action to
foreclose on its mechanic's lien. The trial court in the separate action
found that the lienable fund for S Co.'s contract was exhausted and
concluded that R Co.'s lien was invalid. Subsequently, the court denied
the defendants' motion for summary judgment in the present case, con-
cluding that there was a genuine issue of material fact with respect to
whether there was sufficient privity between R Co. and S Co. so as to
preclude S Co. from pursuing its claims, and this appeal followed. *Held*:
1. The defendants could not prevail on their claim that the court failed to
apply the doctrine of res judicata, thereby improperly denying their
motion for summary judgment:
a. The trial court correctly analyzed the issue of privity: although our
Supreme Court concluded in *Girolametti* v. *Michael Horton Associates*,
*Inc.* (332 Conn. 67) that the presumption of privity arises from the "flow
down" obligation that a general contractor owes to a subcontractor,
there is no corresponding "flow up" obligation extending from a subcon-
tractor to a general contractor, and, thus, the court improperly applied
the presumption of privity in this case; nevertheless, the trial court, on
the basis of certain factual findings, thoroughly analyzed the issue of
privity and correctly concluded, under the functional relationship test,
that a genuine issue of material fact existed as to whether S Co.'s interests
were sufficiently represented in the separate action so as to warrant the
application of res judicata.
b. The defendants' claim that the existence of the right of a general
contractor to intervene in an action by a subcontractor involving a
mechanic's lien established privity was unavailing: the defendants' argu-
ment that, because S Co. had an interest in the separate action and
would be bound by the court's holding in that action, S Co., therefore,
had a right to intervene in that action was circular, the defendants having
failed to identify any case holding that general contractors have an
automatic right to intervene in an application to discharge the mechanic's
lien of a subcontractor, and the defendants did not explain how or
why a failure to intervene could establish privity for the purposes of
res judicata.
2. The trial court properly declined to apply the doctrine of collateral estop-
pel: the court thoroughly analyzed the issue of privity and the question
of whether S Co.'s interests were sufficiently represented in the separate
action, and, on the basis of this analysis, appropriately concluded that
a genuine issue of material fact existed as to whether S Co. and R Co.
were in privity.

Argued May 19—officially released September 21, 2021

*Procedural History*

Action, inter alia, to foreclose on a mechanic's lien,
and for other relief, brought to the Superior Court in
the judicial district of Stamford-Norwalk, where the
named defendant et al. filed a counterclaim; therafter,

the court, *Genuario, J.*, denied the motion for summary judgment filed by the named defendant et al., and the named defendant et al. appealed to this court. *Affirmed.*

*Bruce L. Elstein*, for the appellants (named defendant et al.).

*Anthony J. LaBella*, with whom, on the brief, was *Deborah M. Garskof*, for the appellee (plaintiff).

*Opinion*

VERTEFEUILLE, J. The defendants[1] appeal from the judgment of the trial court denying their motion for summary judgment against the plaintiff, Strazza Building & Construction, Inc. (Strazza). The defendants claim that the court improperly denied their motion for summary judgment, which was predicated on a claim that the action is barred by the doctrine of res judicata.[2] In the alternative, the defendants claim that the court erred in failing to find that Strazza's claims fail as a result of the application of collateral estoppel. We disagree and affirm the judgment of the trial court.

The following facts, viewed in the light most favorable to Strazza, and procedural history are relevant to this appeal. The defendant Jennifer G. Harris (Harris) serves as trustee of the Jennifer G. Harris Revocable Trust (trust), which owns real property located in Greenwich. On June 7, 2016, the defendants hired Strazza to serve as a general contractor for substantial renovations to a home located on the property. After a dispute arose over the cost and quality of the work that had been completed and the estimated time remaining to complete the project, the defendants terminated Strazza. Prior to its termination, Strazza had billed the defendants for $1,570,239.16 in labor and materials. Strazza alleges that, of that sum, $1,009,083.28 has been paid and that it is owed the remaining sum of $561,155.88. Strazza and two subcontractors, Robert Rozmus Plumbing & Heating, Inc. (Rozmus), and Interstate & Lakeland Lumber Corporation, then filed and served mechanic's liens on the defendants claiming unpaid balances. Strazza thereafter commenced the present action on May 2, 2018, seeking to foreclose on its lien and alleging claims for breach of contract and unjust enrichment.

On October 23, 2017, Harris, as trustee for the trust, initiated a separate proceeding against Rozmus (Rozmus action) pursuant to General Statutes § 49-35a[3] seeking to reduce or discharge the mechanic's lien filed by Rozmus. See *Harris* v. *Robert Rozmus Plumbing & Heating, Inc.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-17-6033512-S. Rozmus' mechanic's lien claimed $97,469.86 as the amount due to Rozmus for plumbing services and materials. A trial was held in the Rozmus action to resolve the validity of the mechanic's lien. A principal of Strazza testified at the trial. Prior to trial, Strazza's counsel filed a motion to file an appearance on behalf of a third-party witness. The court in the Rozmus action, *Hernandez, J.*, granted the motion, but, because Strazza was not a party to the Rozmus action, the court did not permit Strazza's counsel to object to any of the questions posed to the principal of Strazza who had testified.

The court in the Rozmus action issued its memorandum of decision on the motion to reduce or discharge

the mechanic's lien held by Rozmus on July 12, 2019, concluding that the lien was not valid. The court in the Rozmus action first found that a number of the charges included in the lien filed by Rozmus either were for work that had not been completed or materials that had never been used, and it reduced the amount of the Rozmus lien to $62,040.36. The court next determined whether Strazza was appropriately owed funds, because Rozmus could recover the sum it claimed to be owed only to the extent that Strazza, as the general contractor, was still owed money. See, e.g., *ProBuild East, LLC* v. *Poffenberger*, 136 Conn. App. 184, 191–92, 45 A.3d 654 (2012). The court in the Rozmus action, therefore, reviewed the charges that were included in the liens held by Strazza and Rozmus and found that Harris was entitled to credits against the liens for many of the charges. For example, the court found that several products had been delivered, but never installed, and that a number of charges contained unwarranted upcharges and overhead. Ultimately, the court concluded that the sum total of the credits due to Harris was $261,194.44.

The court then reviewed the applicable legal principles, most importantly, the general rule that "[a] subcontractor is subrogated to the rights of the general contractor through whom he claims, such that a subcontractor only can enforce a mechanic's lien to the extent that there is unpaid contract debt owed to the general contractor by the owner." Id., 191–92. Additionally, "General Statutes §§ 49-33 and 49-36 . . . define and delimit the fund to which a properly noticed mechanic's lien may attach. Both of these sections start with the proposition that no mechanic's lien may attach to any building or land in an amount greater than the price which the owner has agreed to pay to the general contractor for the building being erected or improved. This amount may be diminished to the extent that it exceeds the reasonable cost . . . of satisfactory completion of the contract plus any damages resulting from . . . default for which [the general contractor] might be held liable to the owner. . . . The amount may be diminished further by bona fide payments, as defined in [§] 49-36, made by the owner [to the general contractor] before receiving notice of [the mechanic's] lien or liens." (Citation omitted; footnotes omitted; internal quotation marks omitted.) *Rene Dry Wall Co.* v. *Strawberry Hill Associates*, 182 Conn. 568, 571–72, 438 A.2d 774 (1980). The court in the Rozmus action first concluded that the total lienable fund was $151,589.15, but after subtracting the credits owed to Harris, the court ultimately concluded that the total adjusted lienable fund was negative $109,605.29. Thus, because the lienable fund for Strazza's contract was entirely exhausted, the lien held by Rozmus was invalid and ordered discharged.[4]

The central finding of the Rozmus action was that no lienable fund existed. Subsequently, the defendants

filed a motion for summary judgment in the present case, arguing that the decision in the Rozmus action warranted the application of res judicata as to the issue of whether a lienable fund exists and that such an outcome is mandated by our Supreme Court's holding in *Girolametti* v. *Michael Horton Associates, Inc.*, 332 Conn. 67, 208 A.3d 1223 (2019).[5] Strazza objected to the motion, arguing that it was not a party to the Rozmus action and could not be bound by a ruling in which it did not have an opportunity to participate and that there was insufficient privity between Strazza and Rozmus for the doctrine of res judicata to apply.

The trial court rendered judgment on February 18, 2020, denying the defendants' motion for summary judgment, from which the defendants have appealed. The court first explained in its memorandum of decision that "there is no genuine issue of material fact that Rozmus was a subcontractor to [Strazza] and provided services and materials to the property owned by Harris, as trustee. There is no genuine issue of material fact that Rozmus filed a mechanic's lien on the subject property and that Harris filed the application to discharge that mechanic's lien, which resulted in an evidentiary hearing and a decision filed by the court . . . . There is no genuine issue of material fact that the court in the Rozmus [action] determined that there was no 'lienable fund' and, [therefore], discharged the Rozmus mechanic's lien." The court acknowledged that, if Strazza was bound by the prior ruling, such a conclusion would necessitate a grant of summary judgment, stating: "Under the applicable law regarding mechanic's liens, if there is no 'lienable fund' there can be no enforceable mechanic's lien. There is no question that, in the Rozmus [action], the court found that there was no lienable fund. If the principles of res judicata and/or collateral estoppel result in the Rozmus court's holding that there was no 'lienable fund' binding [Strazza], then summary judgment must enter in favor of the defendant[s], if not, then the [defendants'] motion for summary judgment must be denied. This is true even though the case at bar includes a breach of contract claim and an unjust enrichment claim, because the ultimate finding of the court in [the] Rozmus [action] was that [Strazza] . . . was not due any money as a result of credits, overcharges and defective work."

In finding that three of the four elements of res judicata were met and, thus, that the issue of privity would determine the outcome of the case, the trial court stated: "The fundamental issue that will control the decision in the case at bar is whether or not the parties to the prior and subsequent actions were in privity with each other . . . ." In addressing this issue, the court then noted that Strazza's mechanic's lien is for a substantially greater sum than Rozmus' mechanic's lien, and that the court in the Rozmus action considered many aspects of the project in which Rozmus had no

involvement, as Rozmus was involved only in plumbing.

Based on these facts, and because Strazza was not a party to the prior proceeding, the court questioned whether it would be equitable "to bind [Strazza] to findings based upon litigation involving a party subcontractor whose involvement in the project represented only a small portion of the work and who might not be in a position to defend the allegations of wrongdoing made against the general contractor concerning portions of the work in which the subcontractor had little or no involvement." Ultimately, the court concluded that, "[w]hile it would seem intuitive that if, as a principle of law, a subcontractor is in privity with a general contractor, that the general contractor must be in privity with the subcontractor. However, because the principle, at most, renders a rebuttable presumption, the court must consider the functional relationship between the parties to determine whether or not there is privity for purposes of employing res judicata or collateral estoppel. As stated, while both Rozmus and [Strazza] are interested in the same question, to wit, whether or not there was a lienable fund (and therefore whether [Strazza] is due any money from [the defendants]), it is difficult to determine that a lone subcontractor's interest in many of these underlying factual issues presents such an identification of interest so as to justify preclusion of [Strazza] from litigating its rights to payment. . . . For all these reasons the court concludes that there is a genuine issue of material fact with regard to the issue of whether or not there was sufficient privity between Rozmus and [Strazza] . . . so as to preclude [Strazza] from pursuing its claims against the owner, and for that reason the motion for summary judgment must be denied." This appeal followed.[6]

I

The defendants first claim that the court failed to apply res judicata, thereby improperly denying their motion for summary judgment. Specifically, the defendants claim that the court (1) failed to apply the presumption of privity appropriately and (2) failed to consider that Strazza had the right to intervene in the Rozmus action. In response, Strazza argues that the court correctly considered the presumption and determined that Strazza had overcome the presumption, and that the court properly dismissed the defendants' intervention of right argument.

We first set forth our standard of review and the applicable legal principles.

"[T]he applicability of res judicata . . . presents a question of law over which we employ plenary review." (Internal quotation marks omitted.) *Girolametti* v. *Michael Horton Associates, Inc.*, supra, 332 Conn. 75. Where, however, only the element of privity is relevant, as in the present case, this legal question is driven by

the factual findings of the court relative to the functional relationship of the parties. See id., 76.

"[T]he doctrine of res judicata, or claim preclusion, [provides that] a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action [between the same parties or those in privity with them] on the same claim. A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose. . . . The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it. . . . In order for res judicata to apply, four elements must be met: (1) the judgment must have been rendered on the merits by a court of competent jurisdiction; (2) the parties to the prior and subsequent actions must be the same or in privity; (3) there must have been an adequate opportunity to litigate the matter fully; and (4) the same underlying claim must be at issue." (Emphasis omitted; internal quotation marks omitted.) Id., 75. As stated previously, only the privity element is relevant to this appeal.

"The following principles govern the second element of res judicata, privity . . . . Privity is a difficult concept to define precisely. . . . There is no prevailing definition of privity to be followed automatically in every case. It is not a matter of form or rigid labels; rather it is a matter of substance. In determining whether privity exists, we employ an analysis that focuses on the functional relationships of the parties. Privity is not established by the mere fact that persons may be interested in the same question or in proving or disproving the same set of facts. Rather it is, in essence, a shorthand statement for the principle that [preclusion] should be applied only when there exists such an identification in interest of one person with another as to represent the same legal rights so as to justify preclusion. . . .

"While it is commonly recognized that privity is difficult to define, the concept exists to ensure that the interests of the party against whom collateral estoppel [or res judicata] is being asserted have been adequately represented . . . . A key consideration in determining the existence of privity is the sharing of the same legal right by the parties allegedly in privity. . . .

"Consistent with these principles, this court and other courts have found a variety of factors to be relevant to the privity question. These factors include the functional relationships between the parties, how closely their interests are aligned, whether they share the same legal rights, equitable considerations, the parties' reasonable expectations, and whether the policies and rationales that underlie res judicata—achieving finality and repose, promoting judicial economy, and

preventing inconsistent judgments—would be served. . . . [T]he crowning consideration, [however, is] that the interest of the party to be precluded must have been sufficiently represented in the prior action so that the application of [res judicata] is not inequitable." (Citations omitted; internal quotation marks omitted.) Id., 75–77.

## A

The defendants first claim that the trial court failed to appropriately consider the presumption of privity set forth in *Girolametti*. In response, Strazza argues that the court correctly concluded that the presumption was rebutted. We conclude that the presumption does not apply because the facts of *Girolametti* are clearly distinguishable from those of the present case. We further conclude, however, that the judgment of the court should be affirmed on the basis of its analysis relative to the issue of privity.

We turn first to the issue of the applicability of the presumption of privity. Because our Supreme Court's decision in *Girolametti* is central to the parties' claims, we provide a brief summary of that case. In *Girolametti*, following the completion of a construction project, the owners of the property and the general contractor entered into arbitration to resolve various disputes. Id., 71–72. Before the arbitration concluded, the owners decided to no longer participate in the arbitration hearings and failed to present their damages claims. Id., 72. The arbitrator subsequently awarded the general contractor $508,597 in damages and ruled that, because the owners had made a conscious decision to no longer attend the arbitration, they either did not incur any damages or were unable to prove their damages. Id., 72–73.

The appeal in *Girolametti* concerned two actions: one filed during the arbitration proceedings and one filed thereafter, in which the owners alleged negligence in connection with the design and construction of the second floor of the building and sought damages from the general contractor and the subcontractors. Id. Each of the defendants filed a motion for summary judgment on the basis of res judicata, arguing that all of the claims raised in the owner's actions either had been or could have been raised and resolved in the arbitration. Id. The trial court granted the motion filed by the general contractor but denied the motions filed by the subcontractors, concluding that the subcontractor defendants were not parties to the arbitration and, thus, were not in privity with the general contractor. Id., 73–74. The subcontractor defendants appealed from the denial of their motions. Id., 74.

This court ruled that each of the subcontractor defendants was in privity with the general contractor for the purposes of res judicata. *Girolametti* v. *Michael Horton*

*Associates, Inc.*, 173 Conn. App. 630, 685, 164 A.3d 731 (2017), aff'd, 332 Conn. 67, 208 A.3d 1223 (2019). Our Supreme Court affirmed this court's ruling, stating that "the Appellate Court correctly determined that when a property owner and a general contractor enter into binding, unrestricted arbitration to resolve disputes arising from a construction project, subcontractors are presumptively in privity with the general contractor with respect to the preclusive effects of the arbitration on subsequent litigation arising from the project." *Girolametti* v. *Michael Horton Associates, Inc.*, supra, 332 Conn. 87.

In the present case, the defendants argue that the trial court effectively ignored the presumption of privity set forth in *Girolametti*. *Girolametti*, however, is clearly distinguishable from the present case because it involved a situation in which a property owner and a general contractor were engaged in previous arbitration proceedings. Id., 71. This is significant because, in the present case, the previous action was between Harris, as trustee for the trust, which owned the property, and Rozmus, a subcontractor. This difference is crucial, because our Supreme Court concluded in *Girolametti* that the presumption of privity arises from the "flow down" obligation that a general contractor owes to a subcontractor. (Internal quotation marks omitted.) Id., 89. As the court detailed, "this rule primarily has been justified on the theory that subcontractors are in privity of contract with a general contractor, [although] some commentators and other legal authorities also have reasoned that the parties share legal rights because general contractors are vicariously or derivatively liable for the work of their subcontractors." Id., 80–81. In light of this language, it is clear that the opposite is not necessarily true, meaning that there is no corresponding "flow up" obligation that extends from a subcontractor to a general contractor.

Despite there being no corresponding "flow up" obligation that runs from a subcontractor to a general contractor, the trial court still applied the *Girolametti* presumption of privity to the facts of this case. In so doing, the court effectively established a "flow up" obligation that began with Rozmus—the subcontractor—and extended to Strazza—the general contractor. This is clearly beyond the scope of the applicability of the presumption, as detailed by our Supreme Court in *Girolametti*, and, for this reason we conclude that the court erred in applying the presumption of privity to the facts of this case.[7]

Having reached this conclusion, we note that "[i]t is axiomatic that [we] may affirm a proper result of the trial court for a different reason." (Internal quotation marks omitted.) *Rafalko* v. *University of New Haven*, 129 Conn. App. 44, 51 n.3, 19 A.3d 215 (2011). This principle guides our analysis in the present case

because, after applying the presumption of privity, the court found that, because it is "at most . . . a rebuttable presumption, [it] must [still] consider the functional relationship between the parties to determine whether or not there is privity for purposes of employing res judicata or collateral estoppel." Accordingly, the court still conducted a thorough analysis of the issue of privity, despite having improperly applied the presumption.

In conducting this analysis, the trial court accurately concluded that, under the functional relationship test, a genuine issue of material fact existed as to the question of whether Strazza's interests were sufficiently represented in the Rozmus action. After noting that the amount of the mechanic's lien held by Rozmus was far less than Strazza's lien, the court noted that "in litigating the issue of the amount of the lienable fund the [court in the Rozmus action] had to decide many issues relating to work that Rozmus, a plumbing subcontractor, had no involvement. A review of the decision in [the] Rozmus [action] reveals that the basis of the court's decision centered around many portions of the renovations and improvements to the subject property with which Rozmus had virtually no involvement. In *Girolametti*, the opposite was true. The first action involved the general contractor who presumably had involvement in all aspects of the job. The holding in *Girolametti* was that the owner, who was a party to the first proceeding brought by the general contractor, was bound by the rulings in that case when subsequent cases were brought by the subcontractors because the subcontractors were in privity with the general contractor. There [was] no basis for determining that it would be inequitable to preclude the owner, who had the opportunity to fully participate in the first proceeding, from later contesting findings in that first proceeding in later proceedings between himself and certain subcontractors. The owner in *Girolametti* . . . had every opportunity to assert any claim that he might have against a [subcontractor] in the case against the general contractor. The same is not true in the [present] case . . . . [T]he . . . interest [of Rozmus] in the prior litigation, while not nominal, was less than 12 percent of the value of the claim of [Strazza] . . . . More importantly, Rozmus would not have firsthand knowledge [of] or significant involvement [in] many aspects of the required performance of other areas of necessary performance under the general contract."

These findings demonstrate that the court conducted a thorough analysis with regard to the issue of privity. Moreover, we agree with the outcome of the court's analysis, and therefore conclude that, despite having erroneously applied the presumption of privity, the court nevertheless correctly determined that there was a genuine issue of fact as to whether Strazza was in privity with Rozmus for the purpose of res judicata.

B

The defendants also claim that a general contractor has a right to intervene in an action brought by a subcontractor involving a mechanic's lien, pursuant to General Statutes §§ 52-102 and 52-107,[8] and that the existence of such a right establishes privity. Specifically, the defendants argue that Strazza had a right to intervene in the Rozmus action because Strazza had an interest in the action and would be bound by that action. In response, Strazza claims that the court thoroughly considered, and properly rejected, the defendants' argument in this regard. We agree with Strazza.

In resolving this claim, we turn to the reasoning of the trial court: "[T]he application to discharge a mechanic's lien is a statutory right of action designed to provide a property owner with an expeditious process for challenging an encumbrance placed upon his property. The limited relief allowed, the discharge of the subject mechanic's lien, contradicts the defendants' claim that Strazza had an interest in the subject matter since the subject matter of the case was the validity of the . . . mechanic's lien [held by Rozmus] and no other. The defendant[s] [argue] that, because [Strazza] would be bound by the holding regarding the existence of a lienable fund, [Strazza] had an interest in the case, and, therefore, would have been allowed to intervene as a matter of right. This, of course, is a circular argument. Its reasoning is that Strazza had a right to intervene because it would be bound by the holding and that because it would be bound by the holding it had a right to intervene."

We agree with the reasoning of the court that the defendants' argument is circular. Moreover, the defendants have failed to identify a single case holding that general contractors have an automatic right to intervene in an application to discharge a subcontractor's mechanic's lien. Further, beyond the bare assertion that "the failure to intervene cannot now bolster [Strazza's] argument that res judicata does not apply," the defendants have failed to explain how or why a failure to intervene could establish privity for the purposes of res judicata. In any event, if the law does not provide that a general contractor has a right to intervene in a subcontractor's lien discharge case, we fail to see how it could possibly be equitable to later preclude a general contractor's action for its failure to attempt to intervene. Accordingly, we conclude that the court properly rejected the defendants' argument that Strazza should be bound by the holding in the Rozmus action as a result of its failure to intervene.

II

The defendants' final claim is that the court improperly failed to find that collateral estoppel applied to Strazza's claims. In response, Strazza claims that the

application of collateral estoppel is barred because a genuine issue of material fact exists with regard to the issue of privity. We agree with Strazza.

We set forth the applicable legal principles. "Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . . To assert successfully the doctrine of issue preclusion, therefore, a party must establish that the issue sought to be foreclosed actually was litigated and determined in the prior action between the parties or their privies, and that the determination was essential to the decision in the prior case." (Internal quotation marks omitted.) *Deutsche Bank AG* v. *Sebastian Holdings, Inc.*, 174 Conn. App. 573, 587, 166 A.3d 716 (2017), aff'd, 331 Conn. 379, 204 A.3d 664 (2019).

Because the sole issue in the present case is whether Strazza and Rozmus were in privity, "we recognize the 'crowning consideration' in collateral estoppel cases and the basic requirement of privity—that the interest of the party to be precluded must have been sufficiently represented in the prior action so that the application of collateral estoppel is not inequitable. . . . A trial in which one party contests a claim against another should be held to estop a third person only when it is realistic to say that the third person was fully protected in the first trial." (Citation omitted.) *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 818, 695 A.2d 1010 (1997).

In resolving the defendants' claim, we turn to our analysis in part I A of this opinion. As discussed in the context of res judicata, the court conducted a thorough analysis with regard to the issue of privity and the question of whether Strazza's interests were sufficiently represented in the Rozmus action. On the basis of this analysis, the court appropriately reached the conclusion that a genuine issue of material fact exists with regard to the issue of whether Strazza and Rozmus were in privity. Because the privity requirement of collateral estoppel, when applicable, is analyzed under the same principles as res judicata, we conclude that the court also properly rejected this claim. See id.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] This action was brought against the defendant Jennifer G. Harris, both in her individual capacity and as trustee of the Jennifer G. Harris Revocable Trust, which owns the subject real property, and the defendants Robert Rozmus Plumbing & Heating, Inc., and Interstate & Lakeland Lumber Corporation, as junior lienholders to the property. The junior lienholders are not participating in this appeal. Accordingly, our references to the defendants in this opinion are to Jennifer G. Harris, both in her individual capacity and as trustee for the trust.

[2] Generally, the denial of a motion for summary judgment is not appealable, but the denial of a motion for summary judgment predicated on the doctrine of res judicata is a final judgment for purposes of appeal. See *Singhaviroj* v. *Board of Education*, 124 Conn. App. 228, 232, 4 A.3d 851 (2010).

[3] General Statutes § 49-35a (a) provides: "Whenever one or more mechan-

ics' liens are placed upon any real estate pursuant to sections 49-33, 49-34, 49-35 and 49-38, the owner of the real estate, if no action to foreclose the lien is then pending before any court, may make application, together with a proposed order and summons, to the superior court for the judicial district in which the lien may be foreclosed under the provisions of section 51-345, or to any judge thereof, that a hearing or hearings be held to determine whether the lien or liens should be discharged or reduced. The court or judge shall thereupon order reasonable notice of the application to be given to the lienor or lienors named therein and, if the application is not made by all owners of the real estate as may appear of record, shall order reasonable notice of the application to be given to all other such owners, and shall set a date or dates for the hearing or hearings to be held thereon. If the lienor or lienors or any owner entitled to notice is not a resident of this state, the notice shall be given by personal service, registered or certified mail, publication or such other method as the court or judge shall direct. At least four days' notice shall be given to the lienor, lienors or owners entitled to notice prior to the date of such hearing."

[4] Harris also requested the court in the Rozmus action to make a finding that Strazza's behavior constituted fraud, but the court declined to do so, explaining that, "[w]hile the court has very serious concerns about the manner in which the project was undertaken, monitored and billed, Strazza is not a party to this action and, thus, does not have an opportunity to rebut [Rozmus'] claimed inferences. Moreover . . . because there is a net negative balance in the lienable fund, the court does not need to make [a] finding of fraud to reach its conclusion that the instant lien is not enforceable."

[5] In *Girolametti*, our Supreme Court held that, when a property owner and general contractor were previously involved in arbitration, "in the absence of clear evidence of contrary intent by the parties, subcontractors are presumptively in privity with the general contractor on a construction project for purposes of res judicata." *Girolametti* v. *Michael Horton Associates, Inc.*, supra, 332 Conn. 71.

[6] While this appeal was pending, the defendants filed a motion for an articulation of the trial court's decision pursuant to Practice Book § 66-5. The court issued its articulation on July 16, 2020. The court expressed its belief that it had adequately addressed the defendants' arguments as to privity and the application of *Girolametti* to the present case but, nevertheless, addressed those issues in more detail. Further, the court acknowledged that it had not addressed the defendants' claim, raised for the first time in their reply brief in support of their motion for summary judgment, that Strazza could have intervened as a matter of right in the Rozmus action pursuant to General Statutes §§ 52-102 and 52-107. In addressing and denying that claim in its articulation, the court noted that the defendants did not cite a single case holding that a general contractor can intervene as a matter of right in an action involving a homeowner's application to discharge a mechanic's lien of a subcontractor.

[7] We note that a "flow up" obligation establishing privity could exist under circumstances in which a general contractor is seeking only the same funds that a subcontractor sought and lost in a prior action, but, in such a case, the property owner would not be able to rely on the *Girolametti* presumption.

[8] General Statutes § 52-102 provides: "Upon motion made by any party or nonparty to a civil action, the person named in the party's motion or the nonparty so moving, as the case may be, (1) may be made a party by the court if that person has or claims an interest in the controversy, or any part thereof, adverse to the plaintiff, or (2) shall be made a party by the court if that person is necessary for a complete determination or settlement of any question involved therein; provided no person who is immune from liability shall be made a defendant in the controversy."

General Statutes § 52-107 provides: "The court may determine the controversy as between the parties before it, if it can do so without prejudice to the rights of others; but, if a complete determination cannot be had without the presence of other parties, the court may direct that such other parties be brought in. If a person not a party has an interest or title which the judgment will affect, the court, on his application, shall direct him to be made a party."