******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# GREENWICH RETAIL, LLC *v.*
# TOWN OF GREENWICH
## (AC 46825)

Moll, Suarez and Prescott, Js.

*Syllabus*

Pursuant to statute ((Rev. to 2019) § 12-63c (a) and (d)), in determining the present true and actual value in any town of real property used primarily for purposes of producing rental income, the town's assessor may require the submission of certain information regarding such property "on a form provided by the assessor" and any property owner who fails to submit such information "shall be subject to a penalty . . . ."

The plaintiff property owner appealed from the trial court's judgment rendered for the defendant town upholding a municipal tax assessment of a penalty imposed pursuant to § 12-63c (a) and (d). The plaintiff claimed, inter alia, that the court incorrectly determined that the word "provided" in § 12-63c (a) does not require that an income and expense form actually be received by the property owner and/or its agent. *Held*:

The trial court properly determined that the word "provided" in § 12-63c (a) does not require that an income and expense form actually be received by the property owner and/or its agent, as the term is plain and unambiguous and simply means to be made available, there having been no indication that it was intended to impose specific requirements on assessors with respect to how they must make the income and expense forms available to property owners, and, in light of the legislature's comprehensive statutory tax scheme, this court declined to add any such requirements onto the clear statutory language.

The trial court properly determined that the mailing of the income and expense form by the defendant's assessor to the plaintiff's last known address satisfied the requirements of § 12-63c (a), as the court deemed the evidence presented regarding the plaintiff having taken reasonable measures to ensure that the assessor had an up-to-date mailing address to be uncertain and speculative, the evidence presented at trial with respect to the procedures that the defendant followed in sending a bulk mailing demonstrated that they were consistent with the statutory and regulatory taxing scheme, and the assessor provided the form pursuant to § 12-63c (a) by making it available to the plaintiff using the most current information that she had concerning the plaintiff's mailing address, the unambiguous language of § 12-63c having required nothing further.

Argued October 7, 2024—officially released June 10, 2025

*Procedural History*

Appeal from the decision of the defendant's board of assessment appeals imposing a penalty on the plaintiff for failing to timely file a certain form, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Hon. Kenneth B. Povodator*, judge trial referee; judgment for the defendant, from which the plaintiff appealed to this court. *Affirmed.*

*James R. Fogarty*, with whom was *Andrew P. Nemiroff*, for the appellant (plaintiff).

*Owen T. Weaver*, with whom were *Barbara M. Schellenberg*, and, on the brief, *Dennis J. Kokenos*, for the appellee (defendant).

*Opinion*

SUAREZ, J. The principal issue in this municipal tax appeal is whether the requirement of General Statutes (Rev. to 2019) § 12-63c (a)[1] that a municipal tax assessor

---

[1] General Statutes (Rev. to 2019) § 12-63c provides in relevant part: "(a) In determining the present true and actual value in any town of real property used primarily for purposes of producing rental income, the assessor . . . may require in the conduct of any appraisal of such property pursuant to the capitalization of net income method . . . that the owner of such property annually submit to the assessor not later than the first day of June, *on a form provided by the assessor* not later than forty-five days before said first day of June, the best available information disclosing the actual rental and rental-related income and operating expenses applicable to such property. . . .

"(d) Any owner of such real property required to submit information to the assessor in accordance with subsection (a) of this section for any assessment year, who fails to submit such information as required under said subsection (a) or who submits information in incomplete or false form with intent to defraud, shall be subject to a penalty equal to a ten per cent increase in the assessed value of such property for such assessment year. . . ." (Emphasis added.)

We note that the legislature recently has amended § 12-63c. See Public Acts 2023, No. 23-152, § 1; see also part I of this opinion. For the sake of convenience, unless otherwise stated, all references to § 12-63c in this opinion are to the 2019 revision of the statute.

"provide" an owner of real property that generates rental income with a form on which to submit income and expense information is satisfied when that form is timely mailed to, but not actually received by, the property owner and/or its agent. The plaintiff, Greenwich Retail, LLC, appeals from the judgment of the trial court rendered in favor of the defendant, the town of Greenwich, challenging a municipal tax assessment of a penalty pursuant to General Statutes §§ 12-117a and 12-119.[2]

On appeal, the plaintiff first claims that the court incorrectly determined that the word "provided" in § 12-63c (a) does not require that an income and expense form actually be received by the property owner and/or its agent. The plaintiff argues, to the extent that the word "provided" is ambiguous, the court should have strictly construed the statute in its favor. The plaintiff also claims that the trial court erred in concluding that the mailing of the form to the plaintiff by the defendant's assessor (assessor) to its last known address satisfied § 12-63c (a). We disagree and affirm the judgment of the court.

The following facts, which either were found by the trial court or are otherwise undisputed in the record, and procedural history are relevant to our resolution of this appeal. The plaintiff, a Delaware limited liability company, owns certain real property located at 310

---

[2] See General Statutes § 12-117a (a) (1) ("[a]ny person . . . claiming to be aggrieved by the action of . . . the board of assessment appeals . . . in any town or city may make application . . . in the nature of an appeal therefrom to the superior court for the judicial district in which such town or city is situated"); General Statutes § 12-119 ("[w]hen it is claimed that . . . a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof . . . may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated").

Greenwich Avenue in Greenwich (property). The administration of the property, including tax matters, is handled by ESRT Management TRS, LLC (ESRT), the plaintiff's representative property manager.

It is undisputed that the plaintiff's property, as a leased commercial property, falls within the scope of § 12-63c, which governs the submission of income and expense information applicable to certain real properties that generate rental income. Specifically, under § 12-63c, a municipal assessor may require an owner of real property that generates rental income "annually [to] submit to the assessor not later than the first day of June, on a form *provided* by the assessor not later than forty-five days before said first day of June, the best available information disclosing the actual rental and rental-related income and operating expenses applicable to such property," which information is to be used in the assessor's determination of the "present true and actual value . . . of real property used primarily for purposes of producing rental income . . . ."[3] (Emphasis added.) General Statutes (Rev. to 2019) § 12-63c (a).

On or about April 15, 2020, the defendant's assessor bulk mailed notices, along with income and expense forms pursuant to § 12-63c, to all applicable property owners (April, 2020 notice and form). With respect to the plaintiff, however, the court noted that the April,

_____

[3] Because the statutory deadline under § 12-63c (a) to submit income and expense information is June 1, the form must be "provided" to the property owner by mid-April to meet the forty-five day notice requirement. Section 12-63c (d) provides that, if a property owner does not submit the required income and expense information by the statutory deadline, the property owner shall be subject to a 10 percent increase in the assessed value of such property. In 2020, due to the COVID-19 pandemic, Governor Lamont issued Executive Order No. 7S, § 10, which extended the deadline for submitting the income and expense forms to August 15, 2020. Because August 15, 2020, fell on a Saturday, the deadline was further extended with respect to applicable properties to August 17, 2020.

2020 notice and form "was sent to what the plaintiff contend[ed] was an outdated address. Although no documentary evidence was available to verify it, [ESRT] reported that its address . . . had changed a few years earlier ([in] 2016), and that it had sent out notices to that effect, with the implication that the . . . assessor had been sent such a notification. . . .

"After the required § 12-63c notice and form had been mailed to [ESRT's] 'old' address, [ESRT] took steps to correct the address . . . on file with the assessor. This appears to have been prompted by the forwarding of a tax bill in late June from the 'old' address to ESRT at its new/current address. As a result, when the assessor prepared for mailing a reminder notice [and form] to the taxpayers who had not responded to the original mailing, the correct (current) address was used. The assessor provided credible evidence . . . that there had been a follow-up notice [and form] sent out on or about August 3, 2020 (as a lesser bulk mailing), sent to owners who had not yet provided the required . . . information.[4] The plaintiff provided testimony that the follow-up mailing was first identified as having been received on August 24, 2020, after the August 17 deadline for the submission of the required information. . . .

"[A]n effort was made to expedite preparation," and, on September 1, 2020, the plaintiff mailed to the assessor a completed form, but "delivery of the required information . . . was too late." (Footnote added; footnote omitted.) On January 28, 2021, the assessor

---

[4] In its principal appellate brief, the plaintiff also claimed that the trial court correctly concluded that the "reminder" mailing from the assessor directed to the plaintiff at ESRT's updated address on August 3, 2020, did not satisfy § 12-63c. At oral argument before this court, the plaintiff's counsel acknowledged that this purported claim is not a claim of error. We agree and, therefore, need not address its merits. See, e.g., *Doyle* v. *Aspen Dental of Southern CT, PC*, 179 Conn. App. 485, 488 n.5, 179 A.3d 249 (2018).

imposed a penalty on the plaintiff equal to a 10 percent increase in the assessed value of the property for the October 1, 2020 grand list pursuant to § 12-63c (d), for its failure to comply with the statute. The plaintiff appealed to the Board of Assessment Appeals of the Town of Greenwich (board), which upheld the assessor's imposition of a penalty.

Thereafter, the plaintiff appealed from the board's decision to the Superior Court, "claiming that the statutory requirements for imposition of the penalty," specifically, "the requirement of [forty-five] days in which to comply—triggered by the assessor providing a suitable form—ha[d] not been satisfied" because, under a strict construction of the statute, actual receipt was required for the form to be "provided," and the plaintiff, through ESRT, did not actually receive the form until after the extended deadline. The parties filed cross motions for summary judgment, which the court, *Hon. Edward T. Krumeich II*, judge trial referee, denied.

Following the subsequent court trial, the court, *Hon. Kenneth B. Povodator*, judge trial referee, rendered judgment in favor of the defendant. In its memorandum of decision, the court rejected the plaintiff's argument that § 12-63c should be strictly construed in its favor, reasoning that this rule of construction was "primarily focused on interpreting claimed ambiguities in a statute," and that *Wilton Campus 1691, LLC* v. *Wilton*, 191 Conn. App. 712, 725, 216 A.3d 653 (2019), aff'd, 339 Conn. 157, 260 A.3d 464 (2021), on which the plaintiff had relied, involved the imposition of a tax, not a penalty. Furthermore, the court noted that our Supreme Court, in *Wilton Campus 1691, LLC* v. *Wilton*, 339 Conn. 157, 177 n.10, 260 A.3d 464 (2021), determined that General Statutes § 12-55, which governs the publication of grand lists for assessors' respective municipalities, was not ambiguous with respect to the issue before

it and explicitly had reserved opining on whether the strict construction rule applied to tax penalties.

The court also rejected the plaintiff's argument that the defendant failed to comply with § 12-63c in the present case. The plaintiff argued that, on June 29, 2020, the assessor had received notice of ESRT's new address. The court concluded, however, that the proper focus was on the "assessor's records, on the date that the *original request* . . . with the accompanying form had been sent out [in April, 2020]." (Emphasis added.) The court stated that it was the obligation of the property owner, not of the town, to ensure that the assessor had current information as to its correct mailing address. The court found that the "mailing evidence presented by the [defendant] sufficed to establish, [by] a preponderance of the evidence . . . that [the assessor] had mailed the materials to the [plaintiff] at its last known address . . . ."[5] The court concluded that the assessor sent the required form sufficiently in advance of the submission deadline and that the "actual failure of the [plaintiff] to receive the demand and form was due to its failure to take reasonable measures to ensure that the assessor had an accurate up-to-date mailing address." The court rendered judgment in favor of the defendant. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The plaintiff first claims that, to the extent that the word "provided" in § 12-63c (a) is ambiguous, the court

---

[5] In connection with its second claim, the plaintiff states that "the uncontroverted evidence shows that [the April, 2020 correspondence was] not mailed to *the plaintiff's last known address—*[*ESRT's*] *new office—*but mailed, instead, to [ESRT's] old office . . . ." (Emphasis altered.) This assertion contradicts the court's determination that the plaintiff's last known address, as far as the defendant was aware, was ESRT's old office, located on 42nd Street in New York, New York. The plaintiff does not actually claim on appeal, however, that the court erred in concluding that it failed to prove that the defendant had learned of ESRT's new address prior to April, 2020.

should have construed the statute strictly in its favor. The plaintiff contends that the phrase "on a form provided by the assessor" requires that the income and expense form actually be received by the property owner. General Statutes (Rev. to 2019) § 12-63c (a).[6] The defendant counters that the term "provided" should not be interpreted to require a property owner's actual receipt of the required form and that the plaintiff's interpretation of § 12-63c (a) is untenable because it would "[result] in an interpretation of the statute that is both absurd and unworkable." We agree with the defendant.

Our resolution of this claim requires that we interpret § 12-63c (a), which "presents a legal question over which our review . . . is plenary. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . It is a basic tenet of statutory construction that [w]e construe a statute as a whole

---

Therefore, like the trial court, we refer in this opinion to ESRT's last known address as the "old" address.

[6] The only authorities cited by the plaintiff in support of its claim that the income and expense form must actually be received by a property owner under § 12-63c are two Superior Court decisions. First, in *Baker Middletown, LLC* v. *Middletown*, Docket No. CV-22-6073647-S, 2011 WL 6413674, *1 (Conn. Super. September 22, 2023), the court concluded that a taxpayer must actually receive the form for the assessor to have "provided" the form. For the reasons set forth in this opinion, we disagree with that conclusion as a matter of law. Second, *Redding Life Care, LLC* v. *Redding*, Docket No. CV-10-6006338-S, 2011 WL 6413764, *1 (Conn. Super. November 30, 2011), is factually distinguishable from the present case because the form in *Redding* was not sent to the taxpayer's last known address but, rather, to an entirely incorrect address unrelated to the property owner.

and read its subsections concurrently in order to reach a reasonable overall interpretation." (Citation omitted; internal quotation marks omitted.) *Rubin* v. *Brodie*, 228 Conn. App. 617, 637, 325 A.3d 1096 (2024).

We begin our analysis with the statute's plain language "to determine whether, when read in context, it is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Wilton Campus 1691, LLC* v. *Wilton*, supra, 339 Conn. 171. Applying these principles to § 12-63c, and for the reasons that follow, we conclude that the plaintiff's interpretation of § 12-63c is not consistent with the plain language of the statute because the word "provided" in § 12-63c (a) simply means supplied or made available, and does not impose any specific requirement, contrary to the plaintiff's assertions, that assessors must either mail the income and expense forms in a prescribed manner or assure actual receipt by some other method.

Section 12-63c establishes the procedures by which a municipal tax assessor may require an owner of certain property that is used primarily for the purpose of producing rental income to submit income and expense information for the purpose of conducting a valuation of that property. Section 12-63c (a) provides in relevant part: "In determining the present true and actual value in any town of real property used primarily for purposes of producing rental income, the assessor, which term whenever used in this section shall include assessor or board of assessors, may require in the conduct of any appraisal of such property pursuant to the capitalization of net income method, as provided in section 12-63b, that the owner of such property annually submit to the assessor not later than the first day of June, *on a form provided by the assessor* not later than forty-five days before said first day of June, the best available information disclosing the actual rental and rental-related

income and operating expenses applicable to such property. . . .” (Emphasis added.) General Statutes (Rev. to 2019) § 12-63c (a). Section 12-63c (d) further provides in relevant part that any property owner “required to submit information to the assessor in accordance with subsection (a) of this section for any assessment year, who fails to submit such information as required under said subsection (a) or who submits information in incomplete or false form with intent to defraud, shall be subject to a penalty equal to a ten per cent increase in the assessed value of such property for such assessment year. . . .” General Statutes (Rev. to 2019) § 12-63c (d). The key issue in the present appeal, therefore, is the meaning of the phrase “on a form provided by the assessor . . . .” General Statutes (Rev. to 2019) § 12-63c (a).[7]

The term “provided” is not defined in § 12-63c. “In the absence of a statutory definition, words and phrases in a particular statute are to be construed according to their common usage. . . . To ascertain that usage, we look to the dictionary definition of the term.” (Internal quotation marks omitted.) *Rubin* v. *Brodie*, supra, 228 Conn. App. 638–39; see also General Statutes § 1-1 (a). “We may find evidence of such usage, and technical meaning, in dictionary definitions, as well as by reading the statutory language within the context of the broader legislative scheme.” (Internal quotation marks omitted.) *Dorfman* v. *Liberty Mutual Fire Ins. Co.*, 227 Conn. App. 347, 398, 322 A.3d 331 (2024), cert. denied, 351 Conn. 907, 330 A.3d 881 (2025), and cert. denied, 351 Conn. 907, 330 A.3d 882 (2025).

The term “provide” is commonly defined as, inter alia, “to supply or make available,” and “to make something available to . . . .” Merriam-Webster’s Collegiate Dictionary (11th Ed. 2003) p. 1001. “[A]vailable” is defined

---

[7] See footnote 1 of this opinion.

as "accessible, obtainable . . . ."[8] Id., p. 84. The term "provide" was defined similarly in dictionaries at and near the time that § 12-63c was amended in 2000[9] to add the relevant language that the form containing income and expense information must be "provided by the assessor . . . ."[10] See Public Acts 2000, No. 00-215, § 2; see also, e.g., *Ledyard* v. *WMS Gaming, Inc.*, 338 Conn. 687, 697, 258 A.3d 1268 (2021) ("in the absence of statutory definitions, we look to the contemporaneous dictionary definitions of words to ascertain their commonly approved usage").

Our review of the statutory scheme does not reveal any indication that the legislature intended for the term "provided" to have any special or technical meaning in the municipal taxing scheme. See, e.g., *Dorfman* v. *Liberty Mutual Fire Ins. Co.*, supra, 227 Conn. App. 400 ("[i]n the absence of any indication that the term defense as used in [the applicable statute] was intended

---

[8] "[A]ccessible" is defined as "capable of being reached . . . capable of being used or seen . . . ." Merriam-Webster's Collegiate Dictionary (11th Ed. 2003) p. 7. "[O]btain" is defined as "to gain or attain . . . ." Id., 857. The suffix "-able" is defined as "capable of, fit for, or worthy of . . . ." Id., 3. Reading the definitions of "obtain" and "-able" together, "obtainable" may be defined as *capable* of being obtained, gained, or attained.

[9] Prior to June 1, 2000, General Statutes (Rev. to 1999) § 12-63c provided that a property owner shall submit income and expense information to the assessor "on a form prescribed by the Secretary of the Office of Policy and Management or approved in accordance with section 12-61 . . . ." That language was removed, and § 12-63c was amended to include the "on a form provided by the assessor" language at issue in this appeal. Public Acts 2000, No. 00-215, § 2. Thus, the statutory language was amended to allow an assessor to "provide" to a property owner whatever form the assessor deemed necessary and appropriate, rather than requiring an assessor to use a specific form "prescribed" by the Secretary of the Office of Policy and Management.

[10] See American Heritage Dictionary of the English Language (3rd Ed. 1992) p. 1458 (defining term "provide" as "[t]o furnish; supply," and "[t]o make available; afford"); Merriam-Webster's Collegiate Dictionary (10th Ed. 1993) p. 940 (defining "provide" as "to supply or make available," and "to make something available to"); Oxford American Dictionary and Language Guide (1999) p. 802 (defining term "provide" as to "supply; furnish").

to have a technical or special meaning . . . we see no reason to depart from our regular practice of looking to the common usage of a term as defined in dictionaries" (citation omitted; internal quotation marks omitted)). Thus, in the absence of any indication that the word "provided" was intended to impose specific requirements on assessors with respect to *how* they must make the income and expense forms available to property owners, we decline to add any such requirements onto the clear statutory language.

The fact that the assessor has discretion with respect to the manner in which it may provide the income and expense forms does not render the term "provided" ambiguous because it is not plausible, given that word's ordinary meaning, that the term "provided" encompasses the distinct concepts of actual delivery and/or receipt. See Merriam-Webster's Collegiate Dictionary (11th Ed. 2003) p. 1038 (defining "receive" as "to come into *possession* of; acquire" (emphasis added)); see also, e.g., *Ajdini* v. *Frank Lill & Son, Inc.*, 349 Conn. 1, 3, 5–7, 312 A.3d 579 (2024) (concluding that term "file" in General Statutes § 31-294c (b) unambiguously meant to "deliver," which required actual "receipt" and, therefore, employer did not meet its statutory obligation to "file" notice of intention to contest liability to pay compensation for employee's workers' compensation claim by placing notice in mail within statutory period). Although assessors may choose to provide such forms by means other than by a regular mailing, such as by certified mail, return receipt requested, the text of § 12-63c "does not command that level of specificity." *Rubin* v. *Brodie*, supra, 228 Conn. App. 639–40.

It is not for this court to add provisions to a statute. See, e.g., *Cochran* v. *Dept. of Transportation,* 350 Conn. 844, 865–66, 327 A.3d 901 (2024) ("[i]t is not the role of this court to engraft additional requirements onto clear statutory language" (internal quotation marks

omitted)); *High Watch Recovery Center, Inc.* v. *Dept. of Public Health*, 347 Conn. 317, 333, 297 A.3d 531 (2023) ("[i]n the absence of express language in [a statute] mandating that [a] request . . . take a particular form or include certain talismanic language, we will not read any such requirement into the statute"). Indeed, courts "must construe a statute as written. . . . Courts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them. . . . It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is a function of the legislature." (Internal quotation marks omitted.) *Blondeau* v. *Baltierra*, 337 Conn. 127, 143, 252 A.3d 317 (2020). Accordingly, we decline to add to the statute the requirement that an income and expense form "provided by the assessor" must be received by the property owner. Rather, we assume that, if the legislature intended that an assessor be required to demonstrate that an income and expense information form was, in fact, actually delivered to and/or received by a property owner under § 12-63c, it would have stated that requirement expressly.[11] See, e.g., *Costanzo* v. *Plainfield*, 344 Conn.

---

[11] We note that, after our Supreme Court released its decision in *Seramonte Associates, LLC* v. *Hamden*, 345 Conn. 76, 78, 282 A.3d 1253 (2022), in which it concluded that the term "submit," in reference to a property owner's duty to submit income and expense information to their municipal tax assessor within the statutory deadline, was not satisfied when that information was postmarked but not delivered by that date, our legislature amended § 12-63c to add subsection (e), which provides: "Any income and expense disclosure form described in subsection (a) of this section received by the assessor to which such form is due that is in an envelope bearing a postmark, as defined in section 1-2a, showing a date within the allowed filing period, shall not be deemed delinquent." General Statutes § 12-63c (e), codifying Public Acts 2023, No. 23-152, § 1. By doing so, our legislature has now stated that a property owner's posting of an income and expense form within the allowed filing period, as evidenced by a postmark, is sufficient if the form does not arrive to the assessor by the statutory deadline.

Notably, however, the legislature has maintained, consistent with our Supreme Court's holding in *Seramonte Associates, LLC*, that the income and expense disclosure form must in fact be "*received* by the assessor

86, 108, 277 A.3d 772 (2022) ("[i]t is a well settled princi-ple of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so" (internal quotation marks omitted)).

Furthermore, our review of related statutes supports our conclusion that the term "provided" in § 12-63c (a) should not be equated to actual receipt. "[I]n determin-ing the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction." (Internal quotation marks omitted.) *9 Pettipaug, LLC* v. *Planning & Zoning Commission*, 349 Conn. 268, 289, 316 A.3d 318 (2024). Section 12-63c is part of chapter 203 of the General Statutes, which governs property tax assessments. Chapter 203 is, in turn, part of title 12 of the General Statutes, our legislature's pervasive statutory tax scheme; see, e.g., *Danbury* v. *Dana Invest-ment Corp.*, 249 Conn. 1, 20, 730 A.2d 1128 (1999) (citing § 12-63c in support of proposition that process by which plaintiff city assesses real estate is authorized and regu-lated by "pervasive statutory scheme" and stating that procedures by which taxpayer may challenge those assessments are set forth by statutory scheme that care-fully balances procedural and substantive remedies); pursuant to which the duties of assessors are "pre-scribed with particularity. The manner in which real

. . . ." (Emphasis added.) General Statutes § 12-63c (e). Moreover, in amend-ing § 12-63c in this regard, the legislature did not also amend subsection (a) in a way relevant here or change the language at issue in the present case. "[W]hen changes have been introduced by amendment to a statute, the presumed change does not go any further than that which is expressly declared or necessarily implied. . . . We cannot impute to the legislature . . . in the absence of an intent clearly expressed in the [statute], [an intent] to enact [a statute that] involves a departure from existing statutory law." (Internal quotation marks omitted.) *Gaida* v. *Planning & Zoning Commis-sion*, 108 Conn. App. 19, 25, 947 A.2d 361, cert. denied, 289 Conn. 922, 958 A.2d 150 (2008), and cert. denied, 289 Conn. 923, 958 A.2d 151 (2008).

estate is to be described and assessed is explicitly set out." *Empire Estates, Inc.* v. *Stamford*, 147 Conn. 262, 264, 159 A.2d 812 (1960). Assessors' activities also are heavily regulated. See generally §§ 12-62f-1 through 12-62f-6 of the Regulations of Connecticut State Agencies.

In light of this comprehensive scheme, we decline to read into § 12-63c any specific requirement that assessors actually *deliver*, rather than provide or make available, income and expense forms to property owners. Moreover, we note that General Statutes § 12-39bb[12] provides in relevant part that "[r]ecords of the Department of Revenue Services may be *provided* in the form of written documents, reproductions of such documents, films or photoimpressions, or electronically produced tapes, disks or records, or by *any other mode or means which the commissioner determines necessary or appropriate.* . . ." (Emphasis added.) Our reading of the term "provided" in § 12-63c (a) is consistent with the statutory requirements of § 12-39bb.

In several other taxing statutes, however, the legislature has required municipal assessors to send relevant information to taxpayers by certified mail, return receipt requested, by mail, or by other specified methods. See, e.g., General Statutes § 12-53 (c) (1) (assessor may perform audit by giving notice in writing to owner that "shall be placed in the hands of such person or left at such person's usual place of residence or business or shall be sent to such person by registered or certified mail at the last-known place of residence"). Moreover, in some situations, it has evinced its expectation of actual delivery. See, e.g., General Statutes § 12-120b (b) ("A claimant negatively affected by a decision of the Secretary of the Office of Policy and Management . . .

---

[12] Section 12-39bb, which is contained within chapter 202 of the General Statutes, titled "Collection of State Taxes," governs the collection of state taxes, and specifically delineates the ways in which the Department of Revenue Services may "provide" its records.

may appeal such decision . . . . The date of any notice sent by the secretary pursuant to this section shall be deemed to be the date the notice is *delivered* to the claimant." (Emphasis added.)). The legislature has not done so in the present case, which suggests its intent that actual delivery or receipt is not required. See, e.g., *State* v. *Cody M.*, 337 Conn. 92, 103, 259 A.3d 576 (2020) ("[when] a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed" (internal quotation marks omitted)).

In the present case, the plaintiff argues that we should not construe § 12-63c as allowing for the mailing of forms to a property owner's last known address to be an acceptable manner for an assessor to meet its burden to provide the relevant forms. We disagree. Section 12-63c does not require that an assessor use the United States mail to provide the required forms. Indeed, if the legislature wanted to mandate that the assessor mail the form under § 12-63c, it would have so specified. See, e.g., General Statutes § 12-53a (e) (upon receipt of notice from assessor, tax collector of town shall, if such notice is received after normal billing date, within thirty days thereafter "*mail* or hand a bill to the owner" (emphasis added)); General Statutes § 12-233 (a) (2) ("[a] notice of deficiency assessment may be *mailed* to the taxpayer at any time" in case of failure to file return or deficiency due to fraud (emphasis added)).

Instead, we view such statutes as providing procedural protections in favor of taxpayers who are obligated to send information or documents to state and municipal tax authorities. For example, General Statutes § 12-41 (f) allows for the imposition of a penalty if a taxpayer fails to file a declaration of personal property but provides that any declaration of personal property "received by the municipality to which it is due

that is in an envelope bearing a postmark . . . showing a date within the allowed filing period shall not be deemed to be delinquent." See also General Statutes § 12-42 (a) (declaration or extension request may be *filed or postmarked* next business day following submission deadline); General Statutes § 12-146 (no tax shall be construed to be delinquent if such tax was paid through municipal electronic payment service within time allowed by statute or if envelope containing amount due, "as received by the tax collector of the municipality to which such tax is payable, bears a postmark showing a date within the time allowed by statute"). Thus, if the legislature intended to require assessors to provide the income and expense forms in a specific manner, it would have stated that requirement expressly. See, e.g., *Stone* v. *East Coast Swappers, LLC*, 337 Conn. 589, 606, 255 A.3d 851 (2020) ("when the legislature chooses to act, it is presumed to know how to draft legislation consistent with its intent and to know of all other existing statutes" (internal quotation marks omitted)).

Moreover, we agree with the defendant that the plaintiff's interpretation would yield absurd or unworkable results. Our Supreme Court has interpreted § 1-2z to "instruct Connecticut's courts, when construing statutory language, to eschew those interpretations that, although not literally impossible to effectuate, would be so bizarre, impracticable, or contrary to common sense that one cannot reasonably assume that they reflect the considered intent of the legislature." *NEMS, PLLC* v. *Harvard Pilgrim Health Care of Connecticut, Inc.*, 350 Conn. 525, 546, 325 A.3d 196 (2024); see also *Cohen* v. *Rossi*, 346 Conn. 642, 700, 295 A.3d 75 (2023) (*Ecker, J.*, concurring in part and concurring in the judgment) ("the threshold ambiguity analysis under § 1-2z should and must take into account . . . common-sense, practical considerations regarding how the statutory scheme will operate in the real world"). Under the

plaintiff's interpretation, a municipal assessor would be tasked with making sure a rental property owner's address is correct in each assessment period—769 properties in the present case—which would present a nearly impossible administrative burden for municipalities. See part II of this opinion.

A construction of the term "provided" as meaning made available, but not necessarily actually received, properly requires an eligible property owner, who is in the best position to know its current mailing address, to update its mailing address with the relevant tax assessor to avoid a penalty under § 12-63c, which is consistent with the allocation of that affirmative burden in our case law. See *PJM & Associates*, *LC* v. *Bridgeport*, 292 Conn. 125, 142–43, 971 A.2d 24 (2009) (placing burden on property owner to provide or make available information). We therefore decline to conclude that the assessor should shoulder the burden of verifying each property owner's address. Cf., e.g., *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 434, 692 A.2d 742 (1997) ("It is well settled that it is the responsibility of the taxpayer to provide the assessor with sufficient facts to value personal property for tax purposes. . . . It is a self-reporting system by practical necessity, because it simply would be too burdensome on municipal assessors to locate, identify and value all of the taxable personal property in their environs." (Citation omitted; internal quotation marks omitted.)). As property owners are the parties with the greatest ability to prevent the risk of a miscommunication regarding an address change, we conclude that the burden lies appropriately with property owners to provide the relevant municipality with information regarding their most up-to-date addresses. This is particularly so when property owners rely on property managers, whose addresses also may change, for the administration of their tax obligations.

Our conclusion is consistent with the overall statutory scheme. Section 12-63c (a) has granted assessors the express power to require the submission of income and expense forms by property owners by "provid[ing]" such forms, and they necessarily have been conferred certain secondary, implied powers with respect to the exact method by which the relevant forms are "provided." See *United Illuminating Co.* v. *New Haven*, supra, 240 Conn. 439, 458 (explaining that, although municipality only has powers of taxation expressly granted to it by legislature, assessors have implied powers as public officials that are necessary to proper execution of duties because, "[w]hen a general power is given to a municipal officer, whatever is necessary for effective exercise of that power is, in the absence of express authority, conferred by implication" (internal quotation marks omitted)).

As previously stated, if the legislature wanted to add an explicit requirement of actual receipt into § 12-63c (a), it would have done so. Because it has not, we decline to read into the statute words that are not stated therein. Accordingly, because we conclude that the term "provided" in § 12-63c (a) is plain and unambiguous and simply means to be made available, and because the plaintiff's interpretation would yield absurd and unworkable results, we decline to consult extratextual sources of legislative intent, consistent with § 1-2z. The plaintiff's claim that the statute is ambiguous, therefore, is unavailing.[13]

II

The plaintiff's second claim is that the trial court incorrectly determined that the April, 2020 notice and

---

[13] Consistent with our Supreme Court's recent decision in *Wilton Campus 1691, LLC* v. *Wilton*, supra, 339 Conn. 177 n.10, because we conclude that the term "provided" in § 12-63c (a) is unambiguous, we do not consider "whether the maxim that this court resolves any ambiguities . . . in favor of the taxpayer applies . . . ."

form mailed to the plaintiff by the assessor satisfied § 12-63c (a). Specifically, the plaintiff argues, inter alia, that the court (1) incorrectly determined that the plaintiff failed to take reasonable measures to ensure that the assessor had an up-to-date mailing address, and (2) improperly read into § 12-63c a provision that an assessor's request and form for income and expense information "may properly be mailed to a property owner's last known address  .  .  .  ."[14] (Emphasis omitted.) The defendant counters that the trial court properly rejected the notion that § 12-63c requires actual receipt of income and expense forms by the taxpayer.[15] We conclude that the court correctly determined that the

---

[14] In support of its second claim, the plaintiff again argues that the court should have determined that the term "provided" requires actual receipt by the property owner. In part I of this opinion, we have rejected the plaintiff's contention that the assessor's obligation under § 12-63c (a) to provide the form requires that a property owner actually receive it. As stated previously in this opinion, the fact that the plaintiff did not actually receive the form does not negate the statutory sufficiency of the assessor's April 15, 2020 mailing. We need not revisit that issue again here.

[15] The defendant further argues that "the trial court properly applied the mailbox rule  .  .  .  ." Although we agree that the court properly construed § 12-63c, we disagree with the defendant that this case implicates the mailbox rule. Indeed, the court did not apply the mailbox rule in its memorandum of decision. The mailbox rule is a common-law rebuttable presumption providing that, "if a letter is mailed to the correct address with the correct postage, it is presumed it was received." E. Prescott, Tait's Handbook of Connecticut Evidence (6th Ed. 2019) § 3.8.1, p. 133. Such presumptions may be rebutted, however, with substantial countervailing evidence, namely, evidence that the letter was not, in fact, received. Id.

In the present case, the court found that the plaintiff did not receive the April, 2020 mailing containing the appropriate statutory forms. The court stated: "[T]he court finds that the assessor did send out the required demand for [income and expense] information and associated form sufficiently in advance of the due date  .  .  .  but that the *actual failure* of the taxpayer to receive the demand and form was due to its failure to take reasonable measures to ensure that the assessor had an accurate, up-to-date mailing address." (Emphasis added.) Our determination that the mailbox rule does not apply to the facts of this case, however, is not dispositive of our holding that the assessor complied with § 12-63c, because, as we stated in part I of this opinion, actual receipt of the "form provided by the assessor" is not required by § 12-63c (a).

way in which the assessor provided the forms to the plaintiff in the present case complied with § 12-63c (a).

The following additional facts are relevant to our resolution of this claim. In 2016, ESRT moved its offices from 42nd Street to 33rd Street in New York, New York. With respect to the address change, Rodney Gomes, senior vice president and chief controller of ESRT, testified: "I'm assuming that, in 2016, when we alerted all of our lenders, and *I can't give you a copy of anything*, but that this would've been one of our vendors, would've been in our database, and we would've sent a notice changing the address back then." (Emphasis added.) At trial, the defendant offered into evidence an affidavit of Eric Hyland, a mailing specialist with Quality Data Service, Inc. (QDS), in which he averred that QDS had been contracted to prepare and mail demands for annual statements of income and expenses pursuant to § 12-63c. He averred that the assessor's mailing list provided to QDS for the October 1, 2020 grand list contained 769 properties, and that QDS delivered the bulk mailing to the United States Postal Service on April 14, 2020. Along with Hyland's affidavit, proof of the bulk mailing, including the mailing to the plaintiff's last known address, was admitted into evidence.

The court found that, "[a]*lthough no documentary evidence was available to verify it*, the property manager [had testified] that [ESRT's] address (mailing address) had changed a few years earlier ([in] 2016), and that [ESRT] had sent out notices to that effect, with the implication that the . . . assessor had been sent such a notification." (Emphasis added.) The court noted that there was evidence that there had been a "universal" mailing to everyone associated with ESRT to provide notification of the 2016 address change. The court found, however, that, "[a]bsent documentation and absent testimony providing details of the documentation sent out, there is an *inherent uncertainty* of the

level of specificity in such a broad mailing as might be needed for this particular situation." (Emphasis added.) The court further noted that, although a universal notification may be sufficient for "bilateral relationships between ESRT and others," when acting as a representative of a third party, such as the plaintiff in the present case, "a more detailed recitation likely would be needed, to ensure that the recipient of the notice is made aware that the communication is intended to inform the recipient of a change of contact information for a principal."

The court found that the evidence presented by the assessor of its mailing established that she had mailed the materials to the plaintiff at its last known address. The court ultimately concluded that the plaintiff had the obligation to provide an accurate address to the assessor and declined to credit the plaintiff's evidence claiming to the contrary.

We apply plenary review to the question of whether the trial court correctly determined that the April, 2020 mailing satisfied § 12-63c. "Once we ascertain the meaning of the statute, the application of that standard to the undisputed historical facts in determining whether the town complied with the statutory requirements is a mixed question of fact and law, over which our review is plenary." (Internal quotation marks omitted.) *9 Pettipaug, LLC* v. *Planning & Zoning Commission*, supra, 349 Conn. 278.

We address the plaintiff's arguments in turn. First, the plaintiff asserts that the court incorrectly determined that the plaintiff failed to take reasonable measures to ensure that the assessor had an up-to-date mailing address. Although the plaintiff's counsel stated at oral argument before this court that the question of "what is meant by the word provided" was a "pure question of law," the plaintiff asserts in its brief that

the court's finding that the plaintiff "failed to take reasonable measures to ensure that the assessor had an up-to-date mailing address" is "both factually incorrect and legally without basis." The plaintiff does not cite to any legal authority in support of its argument. The plaintiff has attempted to recast this claim as a legal challenge to the defendant's compliance with § 12-63c; however, it is "essentially attacking the underlying factual findings made by the [court]." *Generation Partners, L.P.* v. *Mandell*, 148 Conn. App. 294, 301, 85 A.3d 49 (2014). Although the plaintiff has pointed to the testimony of its witnesses that notice of its new address was "provided in a massive mailing to all of its vendors, tenants and anyone with which it did business or required a filing," the trial court deemed that evidence to be uncertain and speculative, and we will not revisit the court's determinations regarding the weight of that evidence. See, e.g., *Reserve Realty, LLC* v. *Windemere Reserve, LLC*, 346 Conn. 391, 413–14, 291 A.3d 64 (2023) ("[b]ecause it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings" (internal quotation marks omitted)).

In part I of this opinion, we have concluded that the assessor "provided" the form to the property owner within the meaning of § 12-63c through its bulk mailing. The plaintiff has not challenged the court's finding that the assessor mailed the forms to all applicable property owners, including the plaintiff, albeit to ESRT's old address, on April 15, 2020. As the assessor "provided" the forms upon mailing, the court correctly determined that the assessor's April 15, 2020 bulk mailing satisfied the requirements of § 12-63c (a).

Moreover, the evidence presented at trial with respect to the procedures that the defendant followed in sending the "bulk mailing" demonstrated that they were consistent with the statutory and regulatory taxing

scheme. General Statutes § 12-64 (a) provides in relevant part: "Any interest in real estate shall be set by the assessors in the list of the person in whose name the title to such interest stands *on the land records.* . . ." (Emphasis added.) General Statutes § 12-62f (b) provides in relevant part that the secretary of the Office of Policy and Management shall develop "minimum standards for the certification of a computer-assisted mass appraisal system and adopt regulations . . . setting minimum computer-assisted mass appraisal revaluation standards and computerized administrative standards. . . ." Accordingly, §§ 12-62f-1 through 12-62f-6 of the Regulations of Connecticut State Agencies comprehensively regulate and define the minimum standards for computer assisted mass appraisals and charge municipalities with having the capacity to allow for inquiries and updating of real estate records, including addresses.[16] These regulations have the same force and effect of law as the taxing statutes and they reinforce the statute's plain language. See, e.g., *PJM & Associates* v. *Bridgeport*, supra, 292 Conn. 135–36 (concluding that § 12-62i-4 (a) of Regulations of Connecticut State Agencies supported plain meaning of § 12-63c (a), which grants assessors power to require submission of income and expense reports in years in which there was no

---

[16] See, e.g., Regs., Conn. State Agencies § 12-62f-3 (a) (1) (providing for maintenance of data management module that shall contain, with respect to real property, current property owner and mailing address); Regs., Conn. State Agencies § 12-62f-5 (providing for assessment administration module, pursuant to which assessors must have ability to allow inquiries and updating of real estate records); Regs., Conn. State Agencies § 12-62f-6 (providing that assessor's tax collection module shall have ability to process new owner and address changes prior to tax billing); see also Regs., Conn. State Agencies § 12-728 (b)-1 (a) ("A notice of deficiency shall set forth the reason for the proposed assessment, and shall be mailed to the taxpayer's last known address, as shown in the records of the [d]epartment. *It is the responsibility of the taxpayer, or of the taxpayer's legal representative, to give written notification to the* [c]*ommissioner of any change of address, status or circumstances*, and such notification shall be received by the [c]ommissioner prior to the date of any notice of deficiency." (Emphasis added.)).

revaluation of properties). Thus, although assessors are charged with maintaining systems that comply with this statutory and regulatory scheme, they are not obligated to update proactively the addresses of every property owner within the purview of § 12-63c, in the absence of being notified of such a change by the owner. Such basic information is part and parcel of a taxpayer's duty to "furnish the facts [on] which valuations may be based. . . . If he fails to do so, the assessors are only required to act [on] the best information [they] can obtain . . . and the taxpayer cannot justly complain if the assessors, acting in good faith, make an error in judgment in listing and valuing his property." (Citations omitted; internal quotation marks omitted.) *Northeast Datacom, Inc.* v. *Wallingford*, 212 Conn. 639, 649, 563 A.2d 688 (1989); see also *Xerox Corp.* v. *Board of Tax Review*, 240 Conn. 192, 205, 690 A.2d 389 (1997) (taxpayer bears burden of supplying information that provides "the facts [on] which valuations may be based" (emphasis omitted; internal quotation marks omitted)).

Second, the plaintiff argues that the court improperly read into § 12-63c a provision that an assessor's request and form for income and expense information "may properly be mailed to a property owner's last known address . . . ." (Emphasis omitted.) Relying on the fact that other statutes require that information must be sent to a taxpayer's "last known address," the plaintiff asserts that, because § 12-63c does not contain language requiring that the income and expense form be mailed to a property owner's last known address, the assessor could not rely on the plaintiff's last known address and, instead, should have ensured that the plaintiff actually received the form. To the contrary, we read such statutes as being in the nature of a procedural shield to protect taxpayers to ensure that relevant notices are sent to their most recently updated addresses. See, e.g., General Statutes § 12-55 (in case of any increase in

valuation of property, assessor or board of assessors "shall mail a written notice of assessment increase to the last-known address of the owner of the property the valuation of which has increased"); General Statutes § 12-60 (written notice of increase shall be sent to person's last known address); General Statutes § 12-89 (upon denial of exemption, assessor shall mail written notice of such denial to last known address of taxpayer or organization); General Statutes § 12-115 (board of assessment appeals shall mail to owner at "last-known address of the owner, postage paid . . . a written or printed notice to appear"). The absence of this language from § 12-63c, however, does not support an inference that it was impermissible for the assessor to provide the form by mailing it to the plaintiff's last known address. By doing so, the assessor "provided" the form pursuant to § 12-63c (a) by making it available to the plaintiff using the most current information that she had concerning the plaintiff's mailing address. As stated in part I of this opinion, the unambiguous language of § 12-63c (a) requires nothing further. Accordingly, we conclude that the court correctly determined that the mailing by the defendant's assessor, which was sent at least forty-five days before the statutory deadline to the plaintiff's last known address, satisfied the requirements of § 12-63c (a).

The judgment is affirmed.

In this opinion the other judges concurred.